### Tuck v. Beliles.

(Decided May 22, 1913.)

### Appeal from Butler Circuit Court.

1. Officers—Making Arrest for Misdemeanor May Not Kill Defendant But May Meet Force With Force.—While an officer in making an arrest for a misdemeanor, may not kill the defendant in order to make the arrest, it is his duty to meet force with force, if he is resisted; and if he is thus put in danger, he may use such means of self protection as are apparently necessary.

2. Officers—Arrest—When Defendant Cannot Complain That Warrant Was Not Read.—When the defendant knows the officer and knows for what he is arested, and makes an immediate attack upon the officer, he cannot be heard to complain that the warrant was not read to him.

HERDMAN & GARDNER, GRIDER & HARLIN and SIMS & RODES for appellant.

N. T. HOWARD, W. A. HELM for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

On December 22, 1911, three warrants were issued by the judge of the Butler quarterly court against R. E. Tuck, in which he was charged with a breach of the peace, wilfully shooting his pistol in the streets of Morgantown and assault and battery on his wife. The warrants were placed in the hands of C. V. Beliles who is the sheriff of Butler county. Beliles placed them in the hands of two of his deputies who undertook to execute them. They telephoned Beliles that they needed help, and he and another deputy then went to assist them in making the arrest. When they reached the house where Tuck was, in making the arrest one of them shot Tuck through the left arm inflicting a serious injury. He

brought this suit against the sheriff on his bond to recover for his injury.

According to his testimony on the trial, he was at his home, and went upstairs and was sitting on a box examining some tickets which he had when he heard somebody walk in. He looked around and a man shot his pistol and hollered at him, "Throw up your hands." The two deputies came up the stairs and stood near him while the sheriff said to him, "They want you up at the judge's office." He said, "I guess not, I have fixed all of this with Mr. Bradley." One of the deputies said, "Bring him on," and he replied, "You just keep your mouth out of this." At this the other deputy threw up his pistol and shot him. Mr. Bradley was the county attorney. He testified that Tuck came to his house that morning and that he told Tuck to get on his mule and go up to see his brother and straighten up and he would do the best he could for him after he straightened up; that Tuck said that he was not going anywhere, and that he was going to see Bill Tuck, and was going to kill Ed Waddle before sunset; that he would kill them as fast as they came along. He also told the county attorney that he would kill the officers, and that he was not going to be arrested. The county attorney told the sheriff what he had said when he gave him the warrants and told him to be careful. The two deputies who first went to the house testified that they saw him as they approached the house, and that he ran into the house, and that they then learned that he had arms, and telephoned the sheriff. They did nothing more until the sheriff came. The sheriff's statement as to what occurred when he got there is in substance that he found the door of the house fastened, and after calling to Tuck repeatedly and telling him that he had always been his friend and wished no trouble, he forced the door open; that he could not find Tuck on the first floor of the house and after looking through this, went upstairs; that he was not to be seen anywhere upstairs that when he got up there he called out as he had below repeatedly and finally he struck a match, and looking over into a closet found Tuck hidden there; that when he found him Tuck said, "I want you to go away from here, I am not going to be arrested." He said "Elwood, I have been a friend to you," and that Tuck replied with an oath, and started to make a rush on them saying he would kill every one of them; that after calling on him to stop, he drew his

pistol, and fired, when he could not stop him in any other way. The testimony of the sheriff is corroborated not only by the three deputies who were present but by a number of persons in the neighborhood who testified to hearing Tuck cursing and threatening the officers that he would kill them. On this evidence the jury found for the defendants. The plaintiff appeals.

It is insisted for the plaintiff that the sheriff is liable because he did not read the warrants to Tuck; but Tuck's own testimony shows that he understood very well what he was arrested for, and he knew that he was resisting the sheriff and his deputies. He knew the sheriff very well and knew the deputies. He knew the offenses he was charged with, and knew the purpose for which they had come to arrest him. It is true the warrants vere not read to him, but he did not give the officers any opportunity to read the warrants. He resisted arrest as soon as they found him and according to the testimony of the officers immediately began an attack upon them.

The court by his instruction in substance told the jury that they should find for the plaintiff, unless they believed from the evidence that the plaintiff resisted arrest with force, and in that event the officers had the right to use such force as appeared to them in the exercise of a reasonable discretion to be necessary to overcome the force offered by Tuck and protect themselves at his hands, and if they used no more force than was necessary or apparently necessary for this purpose, they should find for the defendants. The instructions appear to us to state fairly the law of the case. While an officer has no right to kill a man in order to arrest him for a misdemeanor, it is his duty to meet force with force, and to use such force as is necessary to make the arrest. If in using such force, he is himself placed in peril he may use such force as is necessary for his self-protection. (Read v. Com., 125 Ky., 126; Stevens v. Com., 124 Ky., 32. The officer is armed with the authority of the law. It is the duty of all good citizens to respect and obey him. If an officer could not meet force with force, desperadoes could never be arrested. It is the duty of the officer to execute his process and when he is resisted he must stand his ground and meet force with force. If the proof for the defendant is true Tuck's conduct was entirely without excuse.

The evidence of Tuck's threats, made on that morning and his repeated declarations that he would not be arrested, were competent to show his state of mind, and these threats having been communicated to the officers, proof of them was admissible in their behalf to show the grounds upon which they acted. On the whole case we find no substantial error in the proceedings. The verdict of the jury is sustained by the evidence.

Judgment affirmed.