## Cornett v. Commonwealth.

(Decided March 13, 1923.)

## Appeal from Perry Circuit Court.

1. Criminal Law—Testimony by Witness He Was Deputy Sheriff is Competent.—Testimony by a witness that he was a deputy sheriff at the time he attempted to arrest accused was competent evidence.

2. Criminal Law—Facts Supported by Undenied Competent Testimony Need Not Be Submitted.—Where the competent testimony of a witness that he was a deputy sheriff at the time he attempted to arrest accused was not denied, it was not error prejudicial to accused to fail to submit that issue to the jury.

3. Arrest—Any Member of Posse May Demand Surrender of Culprit—"Aid."—Under Criminal Code of Practice, section 41, authorizing an officer to summon as many persons as he deems necessary to aid him in making an arrest, and section 39, providing that the persons making the arrest shall inform the person to be arrested of the intention to arrest him and of the offense charged against him, any member of the posse summoned by the deputy sheriff to make an arrest could demand the surrender of the culprit and inform him of the offense, since the word "aid" means to act in co-operation with, and implies a concurrent effort on the part of all of the party, and the other members of the posse could be of little assistance if they could take no action, except to second what the deputy sheriff was doing.

4. Homicide—Resistance to Person Claiming to be Officer, Without Giving Opportunity to Produce Authority, is at Defendant's Risk.—Where accused and his companion were informed by one of the persons approaching them that they were officers seeking to arrest them for a stated offense, thereby affording accused an opportunity either to submit or demand the authority of the officers, the defendants, though not put under the burden of ascertaining the authority of the others, took the risk of resisting them without demanding their authority, and are responsible for the consequences, if they were in fact officers.

5. Arrest—Officers Substantially Comply with Law by Stating Offense and Demanding Arrest, if no Further Opportunity is Given.—An officer is acting legally in making an arrest, if he states the offense and demands submission, and no opportunity is given to produce his authority before the person to be arrested resists.

6. Arrest—Officer Can Use Apparently Necessary Force if Person Committing Misdemeanor Fires at Him.—In an attempted arrest for a misdemeanor, where the offender resists arrest and fires at the officer, thereby committing a felony for which the officer may arrest him, the officer may, for the purpose of that arrest, as well as in his self-defense, use such force as appears to him to be reasonably necessary to effectuate that purpose, notwithstanding Criminal

Code of Practice, section 43, providing that no unnecessary force or violence shall be used in making an arrest.

7. Homicide—Killing of Officer Who Was Attempting to Make Legal Arrest is Murder, if Character Was Known.—A homicide in resisting an officer who is attempting to legally arrest an offender is murder if the defendant knows the official character of the officer, but manslaughter if he does not know it.

8. Homicide—Instruction Requiring Finding of Malice in Killing Officer Held Favorable to Accused.—In a prosecution for the killing of an officer, who was attempting to make an arrest, an instruction requiring the jury to find actual malice on the part of the accused, and also to find that his surrender was demanded, and that he knew the official character of the officer, or could have ascertained it before shooting, was not prejudicial to accused.

9. Homicide—Qualification of Right of Self-defense in Resisting Officer Held Erroneous.—An instruction authorizing an acquittal, if defendant acted in self-defense or in defense of his companion, unless the jury believed he first fired the shot after his arrest had been demanded, and made the danger real, or to himself apparent, was erroneous, as denying the right of self-defense in the event accused fired the first shot, regardless of the situation. It should have required a finding that the surrender was demanded and thereafter, when the officers were using no unnecessary force, the defendant resisted the arrest by first firing a shot.

10. Homicide—Defendant held Entitled to Have Submitted Issue of Right to Resist Assault by Apparent Robbers.—In a prosecution for killing a member of a posse seeking to arrest defendant, where defendant denied that any member of the posse made any statement demanding their surrender, and that he had no notice any one of them was an officer, and claimed he thought they were assaulting him and his companion for the purpose or robbery, he was entitled to have that issue submitted to the jury under proper instruction.

ROGERS T. MOORE, T. E. MOORE, JR., and F. J. EVERSOLE for appellant.

CHAS. I. DAWSON, Attorney General, and T. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Wash Kilbourn and Robert Cornett were indicted in the Perry circuit court charged with the murder of Jerry Cornett. In a separate trial Robert Cornett was found guilty and his punishment fixed at confinement in the penitentiary for life. The evidence is to the effect that one Warren Crisp had some liquor and gave a drink to Logan Johnson, a deputy sheriff; that the latter

threatened to carry him to the county seat and make him divulge the source of his supply and Crisp voluntarily told him that he had arranged with a bootlegger to deliver four gallons to him at a certain place the following Friday night and proposed for the deputy to accompany him to the meeting place, to which he agreed.

On the appointed evening they met in the village of Lothair, and Johnson summoned Crisp, Buffalo Hall, Jerry Cornett and David Grover as a posse to assist him in the anticipated arrest of the bootlegger.

After walking some distance they reached the appointed place at about ten p. m. It was a moonlight night but rather cool and a fire was kindled. Crisp suggested that the bootlegger was expecting to meet two men only, and he and Johnson remained at the fire while the other three hid behind some rocks. Shortly afterward Kilbourn arrived riding a mule and spoke to Johnson, Crisp having gone down the road a short distance. He returned and the three went to get the liquor. It was found in the possession of Robert Cornett about 150 yards away. The four had some conversation about it, Johnson and Crisp sampling it and retiring a time or two for consultation. As they returned to the defendants the last time the other three members of the posse came up.

It is admitted by all parties that up to this time neither Johnson nor Crisp had intimated that they were officers or were seeking to apprehend defendants. They claim that defendants had mentioned the fact that there might be officers around, and if so "they would shoot their heads off;" that on this account Johnson and Crisp were exercising diplomacy and marking time until the remainder of the posse arrived.

On the other hand the defendants assert that the man who accompanied Crisp called himself Jerry Cornett and was so addressed by Crisp and that he said: "If the officers come up they cannot get the whiskey; that he had been in France and had seen men stacked on top of each other and had faced worse things than officers;" that three men were seen approaching and Crisp said: "I see somebody coming, a band of robbers; we will all be killed," and the two jerked out their pistols.

At any rate the other three walked up at the time and it is claimed by the Commonwealth's witnesses that Buffalo Hall said, "Gentlemen, if this is moonshine whiskey consider yourselves under arrest." There was

a short silence and without further words the firing began. The Commonwealth's witnesses say that Robert Cornett fired the first shot, while the defendants as stoutly maintain that such shot was fired by Logan Johnson. The melee lasted but a few seconds but about thirty shots were fired. Jerry Cornett was fatally wounded and both defendants and Logan Johnson more or less seriously injured.

Objection is made to the instructions and to the limitation put upon certain evidence by the court, the former being criticised in many respects. It is assigned as error that the court in the first instruction assumed that Johnson was a deputy sheriff; that the court submitted to the jury the question of Johnson's undertaking to make the arrest, with no evidence to support it; that the court should have instructed the jury that under the evidence Hall had no authority to make the arrest but erroneously failed so to do, and submitted the hypothesis to the jury as to whether appellant knew or could have ascertained Hall's authority in so doing; and on this faulty hypothesis the instruction required the appellant to quietly and peaceably submit to arrest, if he knew or could have ascertained by inquiry for what offense his surrender was demanded, and what authority Hall had to make it; that the instruction told the jury that the posse had the right to use such force as appeared to them in the exercise of a reasonable judgment to be necessary to overcome such resistance.

The first instruction is quite long and we will refer to it without quoting it.

Logan Johnson testified that he was deputy sheriff of Perry county, at the time. This was competent evidence. Goslin v. Comth., 121 Ky. 703. Being undenied the appellant was not prejudiced by the failure to submit that issue to the jury.

Section 41 of the Criminal Code authorizes an officer to orally summon as many persons as he deems necessary to aid him in making the arrest. Section 39 provides that the persons making the arrest shall inform the person about to be arrested of the intention to arrest him and of the offense charged against him for which he is being arrested.

The evidence is uncontradicted that Johnson summoned the other members of the party to aid him in making the arrest. The word "aid" means to act in co-operation with, and implies a concurrent effort on the

part of all of the party. It is not contemplated that all
the posse will be in the immediate presence of the officer
at all times, and the members could be of but little as-
sistance if neither of them could take any action except
to second what he was doing. We are of the opinion that
any one of them when so acting may demand the sur-
render 'of the culprit, and as there was evidence that
Hall did so it was not error to submit that hypothesis to
the jury.

It is shown in the proof that the defendants were
unwilling to bring their liquor down to the firelight, nor
would they deliver it except at a place of their own selec-
tion. They were armed; their conversation ran upon
the subject of officers, and according to the Common-
wealth's witnesses they openly threatened to shoot any
officers who appeared, and all of the facts and circum-
stances indicate that their chief concern was the prospect
of apprehension. Possibly the dilatory tactics pursued
by Johnson and Crisp excited their suspicions but, even
so, when the other three arrived if Buffalo Hall de-
manded that they consider themselves under arrest for
the offense they were then committing this was notice
to them that he was claiming to act with authority and
was a direct statement of the offense for which they were
being arrested.

The opportunity was then afforded them to either
quietly submit or to demand of the officers the authority
upon which they acted. This did not put the burden upon
them of ascertaining that fact, but left upon the officers
the burden of answering such inquiries as were then
made before proceeding further.

If appellants without further inquiry assumed that
the officers were robbers and took the risk of resisting
them, they become responsible for the consequences. It
is sometimes hard to distinguish between the rights of
the individual citizen, which are carefully guarded by
constitutional and statutory provisions on the one hand,
and those of the general public on the other, as repre-
sented by the officers. It is the duty of the latter to ar-
rest offenders against the law, and when acting legally
it is the duty of the offenders to submit to them. Legal
action signifies obedience to the Code provisions, *supra;*
but where the offense is stated and arrest demanded,
and no opportunity given to produce their authority the
law is substantially complied with. Williams v. Comth.,
197 Ky. 602; Partin and Allen v. Comth., 197 Ky. 840;

Collins v. Comth., 192 Ky. 412; Roberson's Criminal Law, page 189; Bishop's Criminal Law, vol. 2, sec. 654; Tuck v. Beliles, 153 Ky. 850; Hickey v. Comth., 185 Ky. 570.

Section 43, *supra,* provides: "No unnecessary force or violence shall be used in making an arrest." In the case of Arnold v. Comth., 20 Rep. 1556, 55 S. W. 895, it was held to be improper in instructing the jury as to the amount of force to be used by the officers, to say: "Such force as reasonably appears to him necessary to overcome such resistance," adding, "The correct rule seems not to be such force as appears to the officers necessary but such force as is necessary to enforce the arrest." Fleetwood v. Comth., 80 Ky. 1, in effect holds the same; but in a number of later cases it is held that, in an attempted arrest for a misdemeanor if the offender resists arrest and fires at the officer, thereby committing a felony, the officer may arrest him for this, and for the purpose of arrest as well as in his self-defense may use such force as may be reasonably necessary or as appears to him to be reasonably necessary to effectuate that purpose. Collins & Hager v. Comth., 192 Ky. 412; Tuck v. Beliels, 153 Ky. 850; Hickey v. Comth., 185 Ky. 510; Smith v. Comth., 176 Ky. 469; Stevens v. Comth., 124 Ky. 32; Reed v. Comth., 125 Ky. 126; Marcum v. Comth., 135 Ky. 1.

At common law and under the decisions of this state in resisting an officer who is attempting to legally arrest an offender, if the latter kills the arresting officer the crime is murder if he knows the official character of the officer, but manslaughter if he does not know the same. Roberson's Criminal Law, page 189; Bishop's Criminal Law, vol. 2, sec. 653; Fleetwood v. Comth., 80 Ky. 1.

This feature of the law was not submitted in its entirety in the first instruction, but under it the jury were required to believe as to actual malice on the part of the defendant, and also to believe that his surrender was demanded and that he knew the official character of the officers, or could have ascertained the same before shooting, hence that instruction was not prejudicial to him.

On the whole we do not think any prejudicial instructions were given with the exception of No. 4, which authorized an acquittal if he acted in self-defense or in the defense of Wash Kilbourn, with the following qualifi-

cation: "Unless you shall believe from the evidence that the defendant, Robert Cornett, after his arrest had been demanded by the said Buffalo Hall, first fired the shot in that difficulty at the deceased, Jerry Cornett, or anyone else connected with the said Logan Johnson and made the danger, real or to himself apparent, then in that event you cannot acquit the defendant upon the ground of self-defense, or apparent necessity therefor, or the defense of his co-defendant, Wash Kilbourn."

The error in this qualification is, it denies the right of self-defense in the event the appellant fired the first shot, regardless of the situation. It should have read:

"Unless you shall believe from the evidence, to the exclusion of a reasonable doubt, that Buffalo Hall demanded defendant's surrender and that thereafter, and when the posse were using no more force than was reasonably necessary to effect their arrest, the defendant, Robert Cornett, resisted such arrest by first firing a shot at some member of said posse and thus made the subsequent danger real, or to him apparent, in which event you cannot acquit him upon the ground of self-defense, or apparent necessity either upon the part of himself or his co-defendant, Wash Kilbourn."

Again the appellant denies that Hall made any statement demanding their surrender or otherwise, or that he knew or had any notice that any of the posse was an officer and claims that he thought they were assaulting defendants for the purpose of robbery. If these statements were true defendants would have had the right to use such force as was necessary or as appeared necessary to them in the exercise of a reasonable discretion to repel such assault, and they were entitled to have this issue submitted to the jury under a proper instruction.

The court properly admonished the jury that the evidence introduced in contradiction of certain witnesses was to be considered merely for the purpose of affecting their credibility if it did so.

Judgment reversed and cause remanded for proceedings consistent with this opinion.