### Keyes v. Commonwealth.
(Decided Nov. 30, 1937.)
(As Modified March 25, 1938.)

J. B. SNYDER for appellant.

HUBERT MEREDITH, Attorney General, J. M. CAMPBELL, Assistant Attorney General, and R. S. ROSE and H. H. FUSON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

On the joint trial of Estill Giles and C. C. Keyes, policeman of Harlan, they were convicted of voluntary manslaughter and sentenced to 21 years in the penitentiary. The judgment was reversed because of error in granting a change of venue and in instructing the jury. Giles and Keyes v. Com., 266 Ky. 475, 99 S. W. (2d) 455. At the second trial, a severance being demanded, the Commonwealth elected to first try Keyes as an aider and abettor instead of Giles, as the principal. He was convicted and sentenced to 18 years' imprisonment. The facts are stated in the first opinion. The Attorney General, with commendable candor, concedes error in the instructions. While employed counsel contend otherwise, their argument is not convincing.

On the first trial there was some testimony tending to show that Keyes fired the shot that killed Cornett, but on this trial there was no contradiction of Giles that his pistol was discharged during a scuffle with the decedent. The first and second instructions covered the issues of whether the defendant was guilty of murder or voluntary manslaughter in aiding and abetting Giles. The third instruction was as to a reasonable doubt of the degree of the crime. The fourth instruction covered the right of the defendant and Giles to defend themselves and each other, and the duty of the jury if they should find the homicide was committed in doing so. But there was added this qualification:

"Unless you shall further believe from the evidence beyond a reasonable doubt that the defendant, C. C. Keyes, first began the difficulty by at-

tempting to arrest the deceased, Tom Cornett, at a time when Tom Cornett was not drunk or so under the influence of intoxicating beverages as to be perceptibly influenced thereby, or by assaulting him and attempting to take and retain him in custody at a time when the deceased was not guilty of such boisterous conduct or drunkenness as defined herein as was calculated to disturb the public peace in the presence of the defendant, Keyes, then in that event you cannot acquit the defendant on the ground of self-defense, or apparent necessity therefor, or the defense of another, or apparent necessity therefor.''

The theory of the Commonwealth in this prosecution apparently is that the arrest or attempted arrest of Cornett was illegal because he had not committed a public offense in the presence of the officer. We are not unmindful of the right of a citizen to protect his liberty and to resist any unlawful restraint. But that right of resistance does not extend to a physical combat with a known peace officer after an arrest has been made. To permit that would be to permit every person arrested to judge for himself then and there, not the official power vested in the officer, but whether he had in fact and in law committed an offense authorizing the exercise of that power. For such an illegal arrest the party has the remedy of habeas corpus and an action for false imprisonment. But two wrongs do not make a right, and if the officer acts in bad faith he cannot escape the consequences if the person arrested does resist.

In Creighton v. Com., 83 Ky. 142, 4 Am. St. Rep. 143, the defendant had killed a man acting as a town marshal, who attempted to arrest him to prevent his committing a breach of the peace. The defense was that the deceased had no right to arrest him for the reason that he was not about to commit an offense; and, secondly, that the deceased was not a town marshal and therefore had no right or power to arrest him. It was claimed that the deceased assaulted the accused and in resisting an assault had used no more force than was necessary to protect his own person from bodily harm. It is stated in the opinion:

"If the deceased was town marshal the appellant had no right to resist the arrest, but should have allowed himself to be taken charge of by the officer,

and made his defense before the justice instead of taking the law into his own hands.''

On the second proposition it was held that the judge and not the jury should have determined whether the facts constituted the deceased a peace officer. Upon the second appeal, it having been determined that the deceased was not a peace officer, the question of the right of the accused to resist the unlawful arrest and the extent to which that resistance could be carried were considered and the instruction on that right was approved. Creighton v. Com., 84 Ky. 103, 4 Am. St. Rep. 193. See, also, Dale v. Com., 186 Ky. 510, 217 S. W. 363; Smith v. Com., 196 Ky. 479, 244 S. W. 878. In no event is one resisting an unauthorized arrest justified in killing the officer. Howard v. Commonwealth, 246 Ky. 738, 56 S. W. (2d) 362.

In the instant case there is no question as to either Giles or Keyes being a peace officer, and the evidence shows that they had arrested Cornett—whether rightfully or wrongfully is beside the point in the matter of their right to defend themselves in their character as individuals or as officers if they acted in good faith and Keyes was not using his authority as a pretext to cover personal or individual action as some little evidence might indicate. It was therefore error thus to qualify this right of defense by instructing that the defendant was deprived of it if he had arrested or attempted to arrest the deceased without authority of law. As stated in 4 Am. Jur. 56, an officer is of necessity the aggressor, and ''must press forward and accomplish his object.'' Therefore, the rule that to be entitled to invoke the right of self-defense a person must not be the aggressor is not applicable. Otherwise an officer could not properly perform his duty. He is not an aggressor in the sense in which that term is used in encounters between private citizens. 30 C. J. 76; Jett v. State, 151 Ark. 439, 236 S. W. 621; Ex parte Warsham, 203 Ala. 534, 84 So. 889.

The evidence is that the real resistance and anger of Cornett was directed toward Keyes, whom he had tripped to the ground and was attacking, telling Giles to turn him loose so he could kill Keyes. Giles was endeavoring to protect Keyes and at the same time overcome Cornett's resistance to arrest.

Upon another trial in lieu of the fourth instruction

the following may be given: No. 5. Although you may believe from the evidence beyond a reasonable doubt that C. F. Giles shot and killed Tom Cornett, and that the defendant, Keyes, was then and there present aiding, abetting, and advising the said Giles to shoot and kill Cornett (if you believe beyond a reasonable doubt from the evidence that he did so), yet if you shall further believe from the evidence that at the time Giles had reasonable grounds to believe, and in good faith did believe, that the said Cornett was then and there about to take the life of either of them, or inflict upon either of them some great bodily harm, then the said Giles had the right to shoot and kill Cornett if it was necessary, or appeared to him in the exercise of a reasonable judgment to be necessary, in order to protect the defendant, Keyes, or himself from the danger of death or great bodily harm, real or to him reasonably apparent. Under such circumstances the defendant, Keyes, had the right to aid, abet, and advise Giles to shoot and kill Cornett, and you should find the defendant not guilty upon the ground of self-defense and apparent necessity, unless you shall believe as in instruction No. 9.

Instruction No. 5 defined the respective duties of the officers and the deceased in relation to the right of arrest and duty to submit thereto. There is error in it, however, as it provides that Keyes and Giles "had the right to use such force as was reasonably necessary to prevent the deceased from escaping even to the extent of shooting and killing the deceased," etc. There is no basis for the idea that Cornett was trying to escape. He was violently resisting because he felt he had committed no offense and the officers had no right to arrest him. The instruction as given permitted argument and the conclusion that, since he was not trying to get away and flee, the specified authority of the officer had no application The right of the officers under the facts was to use such force as was necessary or reasonably appeared to them to be necessary to overcome the forcible resistance of Cornett. Stevens v. Commonwealth, 124 Ky. 32, 98 S. W. 284, 30 Ky. Law Rep. 290; Hickey v. Commonwealth, 185 Ky. 570, 215 S. W. 431; McClees v. Commonwealth, 187 Ky. 533, 219 S. W. 1064; Hatfield v. Commonwealth, 248 Ky. 573, 59 S. W. (2d) 540; Mays v. Commonwealth, 260 Ky. 235, 84 S. W. (2d) 20; Mays v. Com., 266 Ky. 691, 99 S. W. (2d) 801.

Instruction No. 6 submitted the claim that Giles' pistol was accidentally discharged while he was trying to subdue Cornett by striking him with it. But there was appended to the instruction the qualification that, if the killing was brought about by the illegal attempt on the part of Keyes to arrest the deceased, then there could be no acquittal on the ground of accident. For the reasons stated in reference to instruction No. 4, this was error. This instruction (numbering it as No. 6) should carry only the qualification, "unless you shall believe as in Instruction No. 9."

On the first trial of the appellant and Giles, jointly, an instruction on involuntary manslaughter, based upon the reckless and negligent use of the pistol by Giles, was given. It was impliedly approved by the first opinion. The facts justified the giving of the instruction, and it was error to omit it. Lewis v. Commonwealth, 140 Ky. 652, 131 S. W. 517; Clem v. Commonwealth, 198 Ky. 486. It may be given as No. 3.

The instruction as to doubt as to the degree of the offense may be numbered 4 and that defining the terms used in the instructions may be numbered 7.

In lieu of the fifth instruction, the following as No. 8 may be given: No. 8. The defendant, Keyes, and his companion, Giles, were peace officers, and it was the duty of each of them to arrest the deceased, Cornett, if he was publicly drunk or intoxicated or disorderly in his presence, but before doing so it was his duty to notify Cornett of a purpose to arrest him and to advise him of the cause for which he was being arrested. It was the duty of the deceased, Cornett, to submit peaceably to the arrest. If you believe from the evidence that the defendant, Keyes, in good faith had attempted to arrest or had arrested Cornett upon that charge, and while doing so, or having done so, Keyes and Giles, or either of them, was met with forcible resistance from Cornett, they, or either of them, had the right and it was his duty, in order to overcome the forcible resistance and to make the arrest and retain custody after his arrest, to use such force as was necessary, or appeared to them or to him in the exercise of a reasonable judgment to be necessary, even to the extent of shooting and killing Cornett; or if you shall believe from the evidence that the officers, or either of them, under such circumstances, was met with resistance from Cornett to such an extent

that they or either of them was put in danger of his life or of receiving great bodily harm, and that Keyes or Giles believed and had reasonable grounds to believe that either of them was in danger of losing his life or suffering great bodily harm at his hands, then the defendant, Keyes, and Giles, or the one so believing, had the right to use such force as was necessary, or as reasonably appeared to him to be necessary, to overcome such resistance, even to the taking of the life of the said Cornett. If the jury shall believe from the evidence that the shooting and killing of Cornett occurred under either of such circumstances or conditions, then the killing was excusable and the jury should find the defendant not guilty.

We think an instruction in substantially this form, following the next above, which it will be noted premised the rights of the officers upon a good-faith arrest, will take care of the qualification of the defense and accident instructions, and the converse of No. 8, viz.: No. 9. The court further instructs the jury that if they shall believe from the evidence beyond a reasonable doubt that the defendant, Keyes, was not acting in good faith in arresting Cornett upon the charge stated, or that he was using his position as a peace officer and making the arrest of Cornett as a mere pretext to enable him, the said Keyes, to assault the deceased, Cornett, then and in that event Cornett had the right to resist the arrest so attempted and to use such means as reasonably appeared to him to be necessary to prevent the defendant and Giles, or either of them, from taking or retaining him in custody (but not to the extent of killing the officer), and the defendant is not entitled to rely upon Giles' right of self-defense or his defense, as defined in instruction No. 5, or upon accidental killing as defined in instruction No. 6; or to overcome Cornett's resistance as described in instruction No. 8, and the jury should so find. See Newsom v. Commonwealth, 171 Ky. 333, 188 S. W. 387; Fleming v. Commonwealth, 175 Ky. 655, 194 S. W. 788. The usual reasonable doubt instruction may be No. 10.

The statement of the Commonwealth's attorney in argument that the defendant was responsible for the death of the decedent's child, born two weeks after he was killed, was, obviously, very improper. The court sustained an objection to it. The appellant submits that

his motion to discharge the jury on this account should have been sustained. We need not pass upon this question. A repetition of such a flagrant offense should result in a more summary action as by punishment for contempt. Castle v. Commonwealth, 269 Ky. 168, 106 S. W. (2d) 626, 627.

All other questions are reserved.

Judgment reversed.

Whole court sitting.