## Collett v. Commonwealth.

Oct. 26, 1943.

King Swope, Cleon K. Calvert, W. L. Hammond and D. M. Bingham for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

For the killing of John Mason, Odell Collett was convicted of manslaughter and sentenced to the State Reformatory for a term of 7 years. He has appealed from the judgment.

In the late afternoon or evening of October 1, 1942, Jesse Jones, who was City Clerk of Pineville, obtained a warrant for the arrest of John Mason and Silas Slusher, night chief of police and night patrolman, re-

spectively, of the City of Pineville. The warrant charged the offense denounced by KRS 437.110, a felony commonly referred to as banding together for an unlawful purpose. The warrant was issued by the County Judge of Bell County, and was delivered to Jones, who in turn, in company of appellant, Odell Collett, obtained the consent of Ben Mason, a deputy constable of Bell County, to execute its service. The constable deputized Jones and Collett to assist him in making the arrests. Before any attempt was made to execute the warrant, the policemen learned that it had been issued, and went in search of the process servers, who in turn had commenced a search for the policemen. The latter encountered State Highway Patrolmen Greene and Lewis, who, upon invitation, joined in the search for the constable and his deputies. The searching parties met on the sidewalk in front of the Kentucky Cafe in Pineville, at about 9:30 o'clock P. M. The evidence is in sharp conflict as to what occurred thereafter.

The witnesses introduced by the Commonwealth testified that Jones and Collett immediately drew their pistols and pointed them at the policemen and the patrolmen. That Policeman Mason disarmed Jones, and placed him under arrest. That Jones escaped from custody, and obtained another pistol from Collett. That the patrolmen tried to persuade Collett to give them his pistol, whereupon he told them if they would disarm Policeman Mason, he would comply with their request. Patrolman Greene thereupon asked Mason to deliver his arms to him. That he did deliver Jones' pistol, which he was holding, but did not deliver his own, although he made no attempt to remove it from his holster. While Greene was endeavoring to obtain Policeman Mason's pistol, Collett approached and fired two shots into Mason's body. That Mason thereupon started across the street away from the scene, simultaneously attempting to draw his pistol from his holster, whereupon Collett fired three additional shots which entered the policeman's side. The victim of the tragedy died a short time thereafter. No other shots were fired.

The witnesses for the defendant testified that the policemen resisted arrest by force and arms, making it necessary for Collett to shoot Mason to effect the arrest. Further detail of the testimony is unnecessary to disclose the fact that the evidence was sufficient to submit the case to the jury under proper instructions of the

Court. The most serious complaints concern the instructions. We will, therefore, proceed immediately to a discussion of the instruction complained of, which reads:

"The Court instructs the jury that Ben Mason mentioned in the evidence was a deputy constable of Bell County and as such it was his duty and he had the right to arrest the deceased, Johnny Mason, and Floyd Slusher under the warrant of arrest introduced in evidence which had been placed in his hands for that purpose and he had a right to summon the defendant, Odell Collett, and Jesse Jones to aid in making said arrest *and if the jury believe from the evidence that said deputy constable, Ben Mason, did summon the defendant, Odell Collett, and Jesse Jones to assist him in making said arrest* and while acting under said summons in company with said Ben Mason, deputy constable, *they or either of them, in good faith, demanded the arrest of Johnny Mason* and Floyd Slusher, it was the duty of the said Johnny Mason and Floyd Slusher to peacefully submit to said arrest, and if the jury believe from the evidence that the deceased, Johnny Mason resisted said arrest or attempted arrest, forcibly when his arrest and that of said Floyd Slusher *was demanded, if the jury believe from the evidence the arrest was demanded, then the defendant, Odell Collett, had the right to use such force as he in the exercise of a reasonable judgment believed was necessary* to overcome said resistance, even to taking the life of the deceased, if the jury shall so believe from the evidence, they will find the defendant not guilty."

We have italicized the parts of the instruction about which complaints have been made. It is contended that where one is killed by an officer attempting an arrest on a warrant charging a felony, it is error for the Court in his instructions, (1) to predicate the right of the officer to use force upon a finding that he was acting in good faith in making the arrest under the warrant; (2) to place on the officer the duty of exercising reasonable judgment in applying force; and (3) to submit to the jury a question about which there is no dispute, that question being: Whether the constable summoned and deputized appellant to assist him in making the arrest under the warrant. Under ordinary circumstances the question of good faith in the service of a warrant does not enter into the case, and where it does not, an instruction on this issue should not be given. Hickey v.

Commonwealth, 185 Ky. 570, 215 S. W. 431. But evidence in this case was introduced from which the jury could reasonably have inferred that Jones did not act in good faith in procuring the warrant, and Collett was not acting in good faith in assisting the constable to make the arrest. The charge contained in the warrant grew out of trouble Jones had with the policemen a short while before the warrant was procured. On that occasion the policemen arrested him, and it is the contention of the Commonwealth that he had procured the warrant for the purpose of fortifying himself with a defense when he set out to kill the policemen. It is the further contention that Collett was aiding and abetting him in this purpose. The warrant was obtained by Jones, and Collett was named therein as a witness against the policemen. Collett accompanied Jones in search of a process server. They both agreed to be sworn in as deputies and to help the constable make the arrests under the warrant. Both passed by the home of the sheriff and a deputy sheriff, without asking either of these high officers to serve the warrant. They were in search of one person only to make the arrest, and that person was a deputy constable. From proof of the above recited facts, it would not be unreasonable for a jury to conclude that the contention of the Commonwealth, in respect to the bad faith of Jones and Collett, is true. Certainly this evidence is sufficient to submit that question to the jury, and the Court did not err in doing so.

Nor do we believe that the second complaint is well founded. It is argued that, in addition to the officer's right in using such force as reasonably appeared necessary to effect the arrest, he had the additional right, although it did not appear reasonably necessary to him, to use such force as was actually necessary. In support of this contention, appellant cites Cornett v. Commonwealth, 198 Ky. 236, 248 S. W. 540; Hickey v. Commonwealth, 185 Ky. 570, 215 S. W. 431; Mays v. Commonwealth, 260 Ky. 235, 84 S. W. (2d) 20; Stevens v. Commonwealth, 124 Ky. 32, 98 S. W. 284; Ayers v. Commonwealth, 108 S. W. 320, 32 Ky. Law Rep. 1234; Hatfield v. Commonwealth, 248 Ky. 573, 59 S. W. (2d) 540; Keyes v. Commonwealth, 272 Ky. 628, 114 S. W. (2d) 742; Johnson v. Chesapeake & O. Ry. Co., 259 Ky. 789, 83 S. W. (2d) 521; Sizemore v. Commonwealth, 279 Ky. 190, 130 S. W. (2d) 31; Neal v. Commonwealth, 229 Ky. 832, 18 S. W. (2d) 314; Hatfield v. Commonwealth, 248

Ky. 573, 59 S. W. (2d) 540; Taylor v. Commonwealth, 272 Ky. 408, 114 S. W. (2d) 482. In some of the cases cited above the precise question was not before the Court. They dealt with the necessity of the instruction reciting that the officer, in making the arrest, had the right to use such force as reasonably appeared to him to be necessary to effect the purpose. However, others of the cited cases do support appellant's contention, exemplary of which is the Cornett case, [198 Ky. 236, 248 S. W. 543] wherein the Court said: "The correct rule seems not to be such force as appears to the officer necessary, but such force as is necessary to effect the arrest."

The purpose of instructing the jury concerning the right of an officer to use force in making an arrest is to permit the defendant to show by the evidence that the motive actuating violence on his part was pure, and not done with evil intent. If one who maliciously kills another could excuse the killing upon the ground that, although unbeknownst to himself, there was a lurking danger to his own life, or that unbeknownst to him the person resisting arrest is in actual position to escape, and to effect the arrest it was necessary for him to shoot, although he did not believe so at the time, the law of self defense and apparent necessity would be stretched beyond all reason. When one admits having taken the life of another, the burden is upon him to show that the killing was not the result of an evil motive, and, no matter what danger the perpetrator of the crime was in, or what would otherwise have occurred, he cannot excuse an evil motive by showing a situation of which he was not aware at the time he decided to perpetrate the crime. The decision to fire the shots that killed the victim rested solely with the defendant, and he must show what prompted him to perpetrate the act. If he saw that his life was in danger, or if it appeared to him in the exercise of a reasonable judgment that his life was in danger, he had the right to protect himself, even unto the taking of the life of the person endangering his own. But, although it may appear from facts later established that the person who has committed the homicide would himself have been killed, or would have received great bodily harm had he not taken the life of his victim, nevertheless, if he was not aware of those facts and circumstances at the time he committed the homicide, the motive prompting him to kill must necessarily have emanated from an evil heart, and a wilful intent to commit the

crime, and he cannot be excused from his wilful malicious act by a showing of circumstances of which he was not aware. Likewise, although it may appear from facts later established that the person killed would have successfully resisted lawful arrest for a felony, nevertheless, if the arresting officer was not aware of that fact and circumstance at the time he committed the homicide, the motive prompting him to kill must necessarily have emanated from an evil heart, and he cannot be excused by a showing of circumstances of which he was not aware.

The right to shoot in making an arrest, as well as the right to shoot in self defense, rests upon necessity, and, as said in Stanley v. Commonwealth, 86 Ky. 440, 442, 6 S. W. 155, 156, 9 Am. St. Rep. 305, "apparent reasonable necessity is the whole law and reason of it." The right must be restricted by law to cases of apparent reasonable necessity, but it cannot be denied altogether. To not restrict the right to what appeared to the defendant in the exercise of a reasonable discretion to be necessary, would permit a wrongful act to be protected, although maliciously done. In Keyes v. Commonwealth, 272 Ky. 628, 114 S. W. (2d) 742, 744, it was said:

"We are not unmindful of the right of a citizen to protect his liberty and to resist any unlawful restraint. But that right of resistance does not extend to a physical combat with a known peace officer after an arrest has been made. To permit that would be to permit every person arrested to judge for himself then and there, not the official power vested in the officer, but whether he had in fact and in law committed an offense authorizing the exercise of that power. For such an illegal arrest the party has the remedy of habeas corpus and an action for false imprisonment. *But two wrongs do not make a right, and if the officer acts in bad faith he cannot escape the consequences* if the person arrested does resist." (Emphasis ours.)

And so we think that the rule laid down in the Cornett case is erroneous, and, in so far as it is inconsistent with the reasoning contained above, it is specifically overruled. But where the defendant killed an officer who first shot at him, in attempting to arrest him, a different rule should prevail; and it may be that the rule established in that state of case has been cause for confusion in cases of the character under consideration

herein. That rule is that the defendant, to justify shooting at the officer, must prove to the satisfaction of the jury not only that the officer did not shoot at him under the reasonable belief that he would otherwise escape, but, in addition thereto, must prove that he actually was not endeavoring to escape or resist the arrest. For there the burden is on the person being arrested to establish his own pure motive in the fracas which resulted in the shooting of the officer. Arnold v. Commonwealth, 55 S. W. 894, 21 Ky. Law Rep. 1566. In other words, the defendant on trial must establish pure motive on his part, irrespective of whether he was an officer making an arrest or a person being arrested by the officer. The rule stated in Arnold v. Commonwealth, supra, was correct under the facts and circumstances of that case, but we believe it is not good authority under the facts and circumstances shown by this record, or the record in the case of Cornett v. Commonwealth, supra, wherein it was cited.

The next complaint of the instructions is that, since there was no proof to the contrary, the Court erred in instructing the jury upon the issue of whether the appellant was summoned to assist the constable in making the arrest under the warrant. While we recognize the rule that the Court should not submit to the jury an issue about which there is no contradiction in the evidence, we are not willing to extend it to include instances where the only proof of the uncontradicted fact is the testimony of persons for whose benefit the testimony is given. The only person testifying that Jones and Collett were summoned by the deputy constable were Collett and his accomplice, Mason, who were named jointly in the indictment under which Collett was convicted. The jury had the right to determine this question from the demeanor of the witnesses on the stand, and from all other facts and circumstances proven in the case.

The next complaint in respect to the instructions is the contention that the Court submitted to the jury the question of whether the arresting officers had notified the deceased that he was under arrest, and it is urged that, since the deceased knew that the officers had a warrant for his arrest, he was fully informed, and was not entitled to further information in respect to the action of the officers under the direction of the warrant; and appellant cites the following cases in support of this contention: Neal v. Commonwealth, 229 Ky. 832, 18 S. W.

(2d) 314; Hickey v. Commonwealth, 185 Ky. 570, 215 S. W. 431; Tuck v. Beliles, 153 Ky. 848, 156 S. W. 883; Dale v. Commonwealth, 186 Ky. 510, 217 S. W. 363; and Sizemore v. Commonwealth, 279 Ky. 190, 130 S. W. (2d) 31. The argument in this respect loses sight of the fact, which is pointed out in the cited cases, that a person about to be arrested is not only entitled to know that a warrant has been issued for his arrest, but he is entitled to know the offense charged in the warrant. It therefore became imperative for the officers making the arrest to notify him of the arrest and of the charge contained in the warrant; and, since the evidence is conflicting in respect to the notice, both of the charge and of the existence of the warrant, it was a proper issue to submit to the jury upon which to predicate the rights of the defendant in making the arrest.

The Court sustained objections to questions on cross-examination of witnesses Silas Slusher and Leonard Asher. In the questions, both witnesses were asked if they had not made certain statements contrary to their testimony on the trial of the case, in the presence of certain people at other times and places. The objections to these questions should not have been sustained; but the Court permitted appellant to show by other witnesses that Slusher and Asher had made statements contradictory to the testimony they presented on the trial. The error of the Court, therefore, was not prejudicial.

Finally, it is claimed that appellant did not have a fair trial because one of the jurors had had previous difficulty with him, and had made a statement before the trial that he wanted on the jury to convict appellant in order to avenge the previous supposed wrong. The appellant had knowledge of the circumstances which produced the bias in the mind of the juror, if any were present; that being true, he had the right to question the juror concerning his bias before accepting him as a juror. The record fails to disclose such questioning. Appellant, therefore, has not shown sufficient diligence on his part for us to entertain this complaint.

The judgment is affirmed.

Whole Court sitting.