## Ligon v. Redding; Kirkwood v. Same.

June 22, 1945.

Gordon, Gordon & Moore and Earle M. Nichols for appellants.

Herman Southall for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

September 13, 1942, was a bright, clear day. Between 11 and 12 o'clock thereon a truck belonging to appellant, Arnold Ligon and driven by Ruby Kirkwood, collided near Herndon, Christian County, Kentucky, with a truck traveling in the opposite direction, owned by appellee, and defendant, R. C. Redding, which was driven by his servant, Roy Gupton. The collision resulted in instantly killing Gupton and considerably damaging both trucks, as well as injuring Kirkwood.

Two actions were filed in the Christian circuit court against Redding, one by Arnold Ligon and the other by Ruby Kirkwood, the former seeking damages to his truck, and Kirkwood seeking compensation for his personal injuries. Redding's answer to Ligon's petition was a denial of the charged negligence against him, with a counterclaim in which he sought to recover from Ligon damage to his truck, as well as loss of time in its use, upon the ground that the collision—as he charged—was due to the negligence of Kirkwood, the driver of Ligon's truck. The answer to Kirkwood's petition was simply a denial of defendant's alleged negligence, and a plea of contributory negligence. The two cases were consolidated and tried together. At the close of the evidence the court submitted the cases to the jury, and it returned a verdict in favor of the defendant, Redding, for the sum of $900 which the jury found he sustained as damages to his truck and loss of time in its use. The petitions were each dismissed. The motions for a new trial filed by Ligon and Kirkwood were overruled, and from that judgment they prosecute this appeal, insisting chiefly

that the court erred in overruling their motions for a peremptory instruction, since the verdict, as they contend, was and is flagrantly against the evidence so as to authorize the court to sustain their motions under the ruling made by this court in the case of Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. 2d 877, and others since then following the practice ruling therein approved and adopted. That contention calls for a brief synopsis of the facts as developed by the testimony.

The contractor for building an airport at Camp Campbell in Christian County entered into separate contracts with Redding, a citizen of Tennessee, and Ligon, a citizen of Madisonville, Kentucky, to transport crushed rock necessary in the construction of the airport from a quarry in the western part of Christian County to the airport, a distance of about seven miles. Both Redding and Ligon employed, in carrying out their respective contracts, about ten trucks each with capacities of seven or eight tons. At the time of the collision Gupton was traveling east from the quarry with his loaded truck containing about 15,000 pounds of crushed rock, whilst Kirkwood was traveling west toward the quarry for the purpose of reloading his truck. The road over which the trucks traveled was an old county road which when constructed many years before was surfaced with limestone gravel, but which in the meantime had become imbedded in the earth at many places along its route and which was true at the spot where the collision occurred. It was more or less thickly covered with dust that no doubt had become increased by the constant travel over it with the trucks of both Ligon and Redding.

About one-half mile from the point of collision Kirkwood endeavored to pass another truck of one of the transporters, driven by Preston Chandler, but failed in the effort and the latter observed Kirkwood and his truck traveling behind him going in the same direction. Chandler's truck in the meantime had caused a cloud of dust to arise from the surface of the road so as to totally obstruct the view of an approaching traveler. Chandler passed Gupton's truck a measured 270 feet from where the collision occurred, and according to him Gupton was then traveling about 30 miles per hour, and entirely on his right side of the road, which, of course, was Kirkwood's left side. Kirkwood, according to his testimony,

was traveling at about the same speed, although he had been traveling just prior to the collision, according to Chandler, at the rate of about 40 miles per hour. Kirkwood testified that whilst he could not see ahead of him through the dust cloud yet he kept his truck within 35 feet of the dust obstruction which distance did not require as much as one second for him to span, since a speed of 30 miles per hour is 44 feet per second, and the 35 feet from the dust cloud would require less than one second to span, but which was reduced by the part of that distance that Gupton traversed. While so traveling Gupton's truck emerged from the dust cloud 35 feet in front of Kirkwood and his truck, when the collision occurred practically immediately. No eyewitness was introduced at the trial other than Kirkwood, since no one was present but he and Gupton, and the latter, as we have seen, was killed in the collision.

In his testimony Kirkwood was asked:

"Q. What was Gupton doing and where was his truck when it came out of the dust cloud? A. It looked like it was headed toward me. * * *

"Q. After you saw Gupton, in what direction did he drive his truck? A. It looked like he was coming into me." (Our emphasis).

Witness furthermore stated that at the immediate time of the collision "He (Gupton) was on my side in the middle of the road." He was asked and answered these questions:

"Q. When you saw this man coming in your direction out of the dust what did you do? A. I don't know whether I did anything or not.

"Q. Did you do anything. A. I don't know.

"Q. Do you know whether you pulled to the right? A. No, sir, I do not know.

"Q. Do you know you didn't pull to the right? A. I don't know.

"Q. Do you know whether you pulled either way? A. No, sir, I do not."

Kirkwood's testimony consisted in a deposition

which he gave as if on cross-examination, and also his oral testimony at the trial in which he contradicted himself in some respects, especially as to the distance that he was traveling behind the Chandler truck. In the one case he testified that he was trailing Chandler about 100 yards, and in the other testimony he gave he stated that he was behind Chandler about 250 yards. He also stated positively in his deposition that he could see only 35 feet in front of him because of the dust cloud, whilst at the trial he testified that he could see Gupton's truck through the dust cloud a greater distance as it approached him and that he saw his head extending from his cab window looking ahead of him, but how much farther that testimony placed Gupton ahead of him when first seen by witness was not testified to. In the meantime other trucks of each transporter of the crushed stone appeared upon the scene, together with additional others who were not so engaged. The majority of them testified to vague signs and indications appearing on the dust surface of the road having a possible tendency to show how, as well as the exact spot where, the collision occurred, whilst two or three witnesses testified in like manner on behalf of defendant to surface indications showing that the collision must have occurred on Gupton's side of the road.

The indication, to which at least as many as two of defendant's witnesses testified, was and is, to our minds, more persuasive as to where the collision occurred than that of some of the witnesses testifying on behalf of plaintiffs, but it is conceded that the greater number of witnesses so testifying were introduced by plaintiffs. The particular indication referred to was a mark made by a piece of timber or iron that was loosened by the impact and had dropped onto the surface from Kirkwood's demolished truck. It began in the middle, or very near thereto, of the road and extended across Kirkwood's part of the road to where that part of his demolished truck came to rest. Some of plaintiff's witnesses did not materially contradict that testimony, since they themselves proved that the mark so made commenced near to what they thought was the middle of the road. Pictures of the demolished Kirkwood truck show that the dropped part therefrom, which made that mark, fell from about the middle of the width of Kirkwood's truck which was some six or seven feet. If, therefore, the marking

that it made was on or near to the middle of the road the opposite left half of the width of the Kirkwood truck would have been on Gupton's side of the road and which conclusion is inevitable without further corroboration of that fact. However, the momentum of each truck at the time of the contact—one of which was loaded with 15,000 pounds of crushed stone—would cause the loaded Gupton truck to knock the colliding empty truck some distance before any of its demolished part would drop to the surface of the road.

In giving the synopsis of the substance of the testimony regarding the immediate facts surrounding the collision we have not attempted to give in detail the testimony of each and every witness, but what we have thus far stated is a correct delineation of the substance of the testimony on that particular phase of the case. However, there is yet another fact strongly pointing to the conclusion that the collision occurred on Gupton's side of the road. His truck struck the one driven by Kirkwood right behind the latter's cab on its left side with such force as to break the bed completely loose from the cab. The collision also damaged the left front wheel of the Gupton truck so as to practically put it out of business, and the truck was completely turned over spilling and spreading its load over the immediate surroundings. In order for Gupton's truck to have so collided with the Kirkwood truck the latter must necessarily have been turned to the driver's right, in order for the compact to have occurred at the point it did on the Kirkwood truck. If that turn had been made entirely on Kirkwood's side of the road—as plaintiffs contend—then it was necessary for it to have been traveling on the extreme right of that side of the road. But all of the indications show that the collision occurred nearer toward the center of it than to its extreme right edge on Kirkwood's side of the road. That inescapable conclusion strongly indicates that the theory of defendant that Gupton, as the trucks approached each other, was on his side of the road, is the correct one, although the collision may have occurred as plaintiffs contend, on Kirkwood's side, but in order for that to be true he (Kirkwood) must have had his truck on the extreme edge of his side of the road, but which the signs and indications, testified to, contradicted.

Appraising the testimony as a whole as directed toward signs, marks and indications on the surface of the road, we conclude that the issue as to the exact place of the collision was not only a submittable one under the doctrine announced in the Nugent opinion, but that it was sufficient to sustain a verdict in favor of either litigant as to which one of the truck drivers was negligent by traveling over the center of the road on the side of the other one. The jury necessarily so concluded and which we are of the opinion we are without authority to disturb.

But it is insisted that by far the greater number of witnesses testified to indications and marks from which the conclusion might be reached that the collision occurred on Kirkwood's side just across what the witnesses concluded was its center line and a directed verdict for plaintiffs should have been given. But as we have stated, there was no mark indicating that center. We find, however, that the disproportion of the number of witnesses so testified to those giving contrary testimony in favor of defendant is not as large as counsel for plaintiffs point out. But even if the disproportion referred to was as counsel contends, we would not then be justified in holding that the verdict was based on merely a scintilla contrary to the rule approved in the Nugent opinion. This court, and all others so far as we are aware, have iterated and reiterated the rule of practice to the effect that an issue of fact is not necessarily determinable from the disparity of the number of witnesses testifying to it in behalf of contending litigants. That rule is so well established as to require no listing of either texts or opinions. The latest case so holding is that of Weiler v. United States of America, 323 U. S. 606, 65 S. Ct. 548, 550. In writing that opinion the court, said: ''The touchstone is always credibility; the ultimate measure of testimonial worth is quality and not quantity. Triers of fact in our fact-finding tribunals are, with rare exceptions, free in the exercise of their honest judgment, to prefer the testimony of a single witness to that of many.''

In ascertaining the quality of testimony the court clearly meant its convincing force and effect. It is obtained by the triers of factual issues—to a considerable extent—from the deportment of witnesses when testifying, from the inherent credibility of their testimony

as measured by human experience, from the interest of witnesses in the outcome of the litigation, and other factors which tend to convince the triers of the issue—all of which are localized at the place of the trial of the case, but which are hidden from an Appellate court since it has before it only the silent record made in the trial court.

Turning now to the testimony of Kirkwood, who, as we have seen, was the only eyewitness to the collision, counsel for plaintiffs vigorously argue that Kirkwood's testimony should have been accepted as conclusive, and for which reason their motion for a peremptory instruction in favor of their clients should have been sustained. They rely chiefly in support of that contention upon the case of Union Underwear Co. v. Barnett, 285 Ky. 488, 148 S. W. 2d 339, in which, in some respects, the facts were somewhat similar to those appearing in this case. But the witness Payton, the driver of the truck involved in that case—and who was sued jointly with the appellant therein—was positive in his testimony concerning the facts of the collision producing the death of an occupant of the advancing automobile who was killed. He was traveling on Highway No. 60 running between Louisville and Lexington upon the surface of which the center line of the road was clearly marked, and in fixing that line his testimony as to its true location bore none of the aspects of an opinion, but which was not true in this (the instant) case. Payton's testimony was without equivocation, and he made no such statement of a doubtful nature in giving his testimony that "it looked like." Therefore, counsel for him and his employer did not deem it necessary to elucidate his testimony in explanation of what the witness meant, as is done in this case when counsel parenthetically inserts in their brief that "apparently the witness is of the opinion that the middle of the road is my side." In 20 Am. Jur. 1030, section 1180 under the heading of "Uncontradicted Evidence" the text says: "It does not necessarily follow, however, that a verdict or finding must be made in favor of the party introducing uncontradicted testimony, especially if such testimony discloses a variety of circumstances from which different minds may reasonably arrive at different conclusions as to the ultimate facts or if the uncontradicted evidence is that of interested witnesses. There are many cases illustrating the principle that the

testimony of a witness, though uncontradicted, is for the triers of facts, whether court or jury, who are not bound thereby.''

In Note 18 to that text many cases from different courts are cited in support thereof, one of which is reported in 8 A. L. R. 801. All of them fully sustain the text to which they are cited. We approve the rule of the text in the late cases of Hendricks v. Johnson, 297 Ky. 643, 180 S. W. 2d 868; Collett v. Com., 296 Ky. 267, 176 S. W. 2d 893, and Bullock v. Gay, Adm'r etc., 296 Ky. 489, 177 S. W. 2d 883. In the Collett case we said (296 Ky. 267, 176 S. W. 2d 897): ''While we recognize the rule that the Court should not submit to the jury an issue about which there is no contradiction in the evidence, we are not willing to extend it to include instances where the only proof of the uncontradicted fact is the testimony of persons for whose benefit the testimony is given.''

The opinion then quotes the text of Am. Jur., supra, and cites other texts and cases, one of the later ones being, Commonwealth Life Ins. Co. v. Pendleton, 231 Ky. 591, 21 S. W. 2d 985, 986, 66 A. L. R., 1526, in which in answer to the same contention herein made, we said: ''An uncontradicted witness may be so evasive, equivocal, confused or otherwise uncertain as to make his credibility essentially a question for the jury.'' Our opinion in the Bullock case in giving the reason why the testimony of an uncontradicted witness should not be conclusive also said (296 Ky. 489, 177 S. W. 2d 886): ''Had the person who it was alleged made the promise been living and capable of testifying at the trial, and refused to deny the evidence given by plaintiffs' witness, the court would have been justified in finding, as a matter of law, that the promise to pay had been made. But where death has sealed the lips of the only other witness, and the witness testifying is shown to have an interest in the case, we think the findings in respect to the facts testified to should be left to the jury.''

In the annotations following the A. L. R. publication of that opinion (66 A. L. R. 1526) the writer reviews extensively the right or the duty of the trial court to accept as conclusive uncontradicted testimony of an interested witness. However, were we to agree with counsel's contention that the Barnett case relied on by them

was exactly parallel in every respect to the instant one (but which we do not conclude) then all of the domestic cited cases supra, except the Pendleton case, was written after our opinion in the Barnett case, thereby clearly indicating that we disagree with it and by implication overruled it, but for the reasons stated we do not consider its facts as paralleling in all respects those contained in the record. We therefore conclude that the court committed no error in overruling appellants' motion for a directed verdict in their favor.

Counsel for appellants criticize the instructions given and refused by the trial court, four of which were offered by them and being instructions A, B, D, and E. Instruction A in defining the duties of Gupton in the movement of his truck said in enumerating them that "it was his duty to have said truck under complete control, and to give timely warning by horn or other devices of the approach of said truck on said highway at said time and place."

Defendant offered and the court gave instruction F which in defining like duties on the part of Kirkwood as driver of his truck contained the same words "complete control." Appellants' counsel objects to the adjective "complete" in describing necessary control as contained in defendant's instruction F. But, as an original proposition, we fail to see any merit in that contention, since the word "control", standing alone and unqualified, necessarily means, not partial but complete control. If however, we were in error in that respect, yet counsel for appellant in defining the duty of Gupton having inserted that same phrase in instruction A offered by them —and given by the court—they invited the error, if any, now complained of as contained in instruction F offered by them. The same answer may be made as to their criticism that the court erred in requiring their client to give a signal by sounding a horn, when there was no evidence as to whether it was or was not sounded, which appears in both instructions A and F and which error in the latter instruction, if one, was also invited by counsel for appellant. See Stanley on Instructions, page 54, section 38, and the case of Louisville & E. R. Co. v. Hardin, Ky., 117 S. W. 381.

It is also urged that the court erred in overruling appellants' offered instruction C which told the jury

that Kirkwood had the right to presume that all travelers on the highway "would observe and perform all duties imposed by law upon them and him and would not violate the same." While it is true that all litigants—especially those operating motor vehicles on the highways—have the right to indulge the presumption contended for in offered instruction C, yet it does not follow that the court should so instruct the jury, since it appears to be a universal rule—followed in this jurisdiction—that instructions on abstract principles of the law are not required, and in some situations, at least, it would be a reversible error for the court to violate that rule and give such an instruction. The trial court here in other instructions given to the jury, defined the duties of each litigant, one of which was, that the driver of each truck should travel on his right side of the road and which explicitly informed the jury that in this case it was Gupton's duty under the law to observe that requirement. Such an obligation is one running throughout the entire range of the law, i. e., that everyone is presumed to perform his duty under any and all circumstances. We have found no case holding that it was necessary for the court to instruct the jury on presumptions, or assumptions to be drawn by litigants—especially in civil actions—nor has counsel cited us to any such holding. True it is that in arguing this alleged error counsel for plaintiffs cited the cases of Short v. Robinson, 280 Ky. 707, 137 S. W. 2d 594, and Roederer's Adm'r v. Gray, 253 Ky. 669, 69 S. W. 2d 998. But we have carefully read the opinions in those cases and the contention now under consideration is not even mentioned in either of them, although the court in those opinions did write that it is the duty of vehicle travelers on the highway to remain on their side of the road. However, we do find, in Stanley on Instructions, page 1048, section 788, this text: "The court is not required to instruct the jury that the law presumes the accused to be of good character and that this presumption continues throughout the case though such instruction may be correct as an abstract proposition." That statement appears to be in accord with the universal rule supra, to the effect that instructions on abstract principles such as presumptions, assumptions, etc., should not be given.

The court instructed the jury that if its members believed from the evidence that each driver of the in-

volved trucks was guilty of negligence, as defined in other instructions, then it "will not award damages to either plaintiff or defendant, and so state in your verdict." The jury was thus informed as to their duties under all possible findings of facts relating to the collision as to which litigant was blameable therefor to the exclusion of blame on the part of the other or as to whether each driver was negligent. Its verdict reflects the conclusion reached, which was later reviewed by the court, and approved by it, in the order overruling the motion for a new trial. In the circumstances, and in the light of the evidence, we do not feel authorized under the prevailing rules of practice, to disturb such findings.

Wherefore, for the reasons stated, the judgment is affirmed.