STATE OF WEST VIRGINIA

*v.*

CHARLES LEE MITTER

(No. 14908)

Decided March 22, 1982.

*Jay Montgomery Brown* for appellant.

*Chauncey H. Browning* Attorney General, *S. Clark Woodroe*, Assistant Attorney General, for appellee.

McHUGH, JUSTICE:

This case is before this Court on an appeal from a final order of the Circuit Court of Preston County, entered on September 11, 1979, denying the defendant Charles Lee Mitter's motion to set aside the jury verdict and to award a new trial. The defendant was indicted on June 12, 1979, for the murder of Michael Dakon. He was found guilty of voluntary manslaughter on August 22, 1979. The defendant was sentenced to an indeterminate term of one to five years incarceration. Charles Lee Mitter assigns three

errors on this appeal: (1) the trial judge's admission into evidence of confessions he gave to the police; (2) insufficiency of the evidence; and (3) the trial judge's instruction to the jury when it indicated that it was deadlocked. We find the first error assigned to be dispositive of this appeal and do not reach the second two errors assigned.

Michael Dakon was murdered on October 11, 1975. At approximately 8:30 p.m. Michael Dakon was hunting in the woods near his home. Michael Dakon was shot twice with a shotgun. One shot struck him in the face causing massive brain damage. The physical evidence indicated that this shot was fired from close range. The second shot caused only superficial pellet wounds and was fired from a farther distance.

The police initially made little progress in their attempt to discover the identity of Michael Dakon's assailant. Late in 1975 and during 1976, one deputy sheriff who was working on the case, Deputy Kenneth Ferrell, was given statements which indicated that the defendant and one Robert Ervin had been overheard bragging about killing Michael Dakon. No other significant evidence was developed prior to 1979.

In June of 1979, Trooper L. L. Henry, of the West Virginia State Police's support unit, was assigned to the case. Trooper Henry specializes in unsolved cases and interrogation. The State's brief indicates that Trooper Henry was brought into the case as "a last resort."

During the suppression hearing it was revealed that Trooper Henry arrived in Kingwood, West Virginia, on the morning of June 2, 1979. He was briefed on what was known about the slaying of Michael Dakon. As a part of his investigation, he inspected the scene of the crime. That same morning Deputy Ferrell hand delivered a letter to the defendant asking him to come to the prosecutor's office for questioning. The defendant complied with this request and arrived at approximately 1:00 p.m. From that point on there are substantial discrepancies among the State's witnesses as to what occurred.

At some point between 1:20 p.m. and 2:25 p.m. Corporal Henry began to interrogate the defendant. Corporal Henry gave the time as 2:25 p.m. Other witnesses for the State indicate that Corporal Henry began to question the defendant sometime between 1:00 p.m. and 1:20 p.m. It is uncontested that Corporal Henry was alone with the defendant at this first interview. Corporal Henry testified that he began this interview by advising the defendant of his rights. The defendant disputes that he was advised of his rights. Corporal Henry did not obtain a written waiver of the defendant's rights.

At 3:00 p.m. the defendant signed a written waiver of rights form. By that time, according to Henry, the defendant had confessed his complicity in the murder of Michael Dakon. Henry conveyed this information to Deputy Ferrell and a summer intern in the prosecutor's office, Marc Halbritter. At 3:05 p.m. Deputy Ferrell and Halbritter obtained another written waiver of rights from the defendant. At 3:08 p.m. Deputy Ferrell and Halbritter began to transcribe the defendant's statement. Corporal Henry was not present during that period. The first written confession was completed at 4:30 p.m.

Deputy Ferrell and Halbritter then left the defendant in the interrogation room. Corporal Henry, Prosecuting Attorney Ronald Brown, Deputy Ferrell and Halbritter discussed discrepancies between the statement that the defendant had just given and what was already known about the crime. The discrepancies were major ones involving, among other things, the time the crime was committed, landmarks in the area where the crime occurred, and the precipitating cause of the crime.

After that discussion Corporal Henry returned to the interrogation room for a second interview with the defendant. There is substantial conflict in the record regarding which persons were present in the room during Henry's second interview, what was said by Henry to the defendant, and how long such discussion lasted. Corporal Henry testified that he talked to the defendant for only ten minutes on the second occasion. Deputy Ferrell testified that the discussion could have lasted up to an

hour. Halbritter testified that the discussion probably lasted 30 to 45 minutes. Deputy Ferrell initially testified that Henry was alone with the defendant during the second interview. Corporal Henry testified that he was not alone with the defendant during the second interview but did not specify which persons were in the room with him. Deputy Ferrell was recalled to the stand and testified that he remembered that he had been leaning in the doorway, or standing just inside of it, during Corporal Henry's second interview. When asked what was said between Henry and the defendant, Ferrell testified: "I recall ... Corporal Henry telling Charles Mitter that he should tell the complete truth. Now as to what else was said, I don't recall." Halbritter testified that the prosecutor, Ronald Brown, was in the room during Corporal Henry's second confrontation of the defendant. He also recalled hearing part of the exchange between Henry and the defendant. When asked whether the defendant indicated whether he had told the whole truth in the first statement, Halbritter answered: "I don't remember him saying anything either way. However, he consented to give better or more full answers to our questions. . . . The prosecutor, Brown, did not testify.

At 5:40 p.m. Deputy Ferrell and Halbritter began to take a second written statement from the defendant. No written waiver of rights form was obtained prior to this statement. There is no indication in the record that the defendant was advised of his rights at anytime after 3:05 p.m. This second confession was completed at 6:40 p.m. In the second confession, the defendant recounted the details in a manner consistent with what was revealed by the police investigation. He was formally arrested and was arraigned before a magistrate shortly after the second statement was completed.

There is little testimony in the record about when the defendant was arrested in the sense that his liberty was restrained. *See Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *State v. Stanley*, ___ W. Va. ___, 284 S.E.2d 367 (1981). Only Corporal Henry was asked the time when the defendant was no longer free to

leave the prosecutor's office. He avoided the question and gave a non-responsive answer.

During the interrogation of the defendant, other significant events occurred. At 1:30 p.m. Deputy Ferrell had walked across the street to Magistrate Howard Nordeck's office and had told him that he would be needed shortly to issue an arrest warrant in a murder case. At 2:00 p.m. Deputy Ferrell called Magistrate Nordeck to tell him that his services would not be needed until around 5:30 that evening. Magistrate Nordeck was called at his home late on the evening of June 2, 1979, and requested to come to his office for the defendant's arraignment.

The defendant challenged the sufficiency of the State's adherence to constitutional safeguards and the voluntariness of the confessions. The trial judge held that the defendant had been adequately advised of his rights and that the State had met its burden of showing that the statements were made voluntarily. The defendant also challenged the admissibility of the confessions on the basis of the State's failure to promptly present him for arraignment before a magistrate. The trial judge, relying on *State v. Mason,* 162 W. Va. 297, 249 S.E.2d 793 (1978), and *State v. Staley,* 162 W. Va. 800, 253 S.E.2d 66 (1979), considered the time lapse between the arrest and the arraignment to be the controlling factor on this issue and held that the delay in this case "was not unreasonable so as to render the confession inadmissible." The defendant argues that the trial judge's rulings on the admissibility of the confessions were error requiring reversal.

In the syllabus of *State v. Vance,* 162 W. Va. 467, 250 S.E.2d 146 (1978), we held:

> 1. 'The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of all or a part of an offense were voluntary before such may be admitted into the evidence of a criminal case.' Syl. pt. 5, *State v. Starr,* W. Va., 216 S.E.2d 242 (1975).

> 2. It is a well-established rule of appellate review in this state that a trial court has wide

discretion in regard to the admissibility of confessions and ordinarily this discretion will not be disturbed on review.

3. A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence.

The question in the case before us is whether the trial judge erred in admitting the defendant's confessions. We hold that he did err by admitting into evidence the second confession.

*W. Va. Code*, 62-1-5 [1965], provides, in part:

An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence, shall take the arrested person without unnecessary delay before a [magistrate] of the county in which the arrest is made.

*See also W. Va.R.Crim.P.* 5(a). We recently discussed the history and purpose of the requirement of prompt presentment in *State v. Persinger*, ___ W. Va. ___, 286 S.E.2d 261 (1982). There we said: "[T]he focus is not so much on the length of the detention but whether the police were primarily using the delay in bringing the defendant before a magistrate to obtain a confession from him." 286 S.E.2d at 270. While we noted that such a delay is but one factor in applying the totality of the circumstances test, we held in syllabus point six: "The delay in taking the defendant to a magistrate may be a critical factor where it appears that the primary purpose of the delay was to obtain a confession from the defendant." The opinion observed that "an unjustifiable and unreasonable delay in taking the accused before a magistrate after his initial arrest may in itself be sufficient to render a confession involuntary." 286 S.E.2d at 271.

It is unclear, as pointed out above, exactly when the defendant in this case was arrested in the sense that his liberty was restrained. It is clear, however, that Deputy

Ferrell thought that probable cause existed when the defendant came to the prosecutor's office. Corporal Henry disagreed with Ferrell's conclusion but admitted that probable cause did exist after the first oral confession was made to Henry around 3:00 that afternoon. It is reasonable to assume the defendant was no longer free to leave the premises at that point. The trial judge ruled that probable cause did not exist until after the defendant made his first confession.

In ruling on the defense's prompt presentment argument, the trial judge said:

> It is the opinion of the Court that as indicated before, there was no probable cause to arrest until such time as the defendant commenced his confession and I don't believe under those circumstances that the burden is then upon the State as soon as he commences the confession to stop everything and take him before a magistrate before the confession is brought to its conclusion.

The trial judge's statement is undoubtedly correct as far as it goes. The failure to bring the defendant to a magistrate after he talked to Corporal Henry the first time but before his statement was transcribed was not an unnecessary delay in violation of *W. Va. Code*, 62-1-5 [1965]. The purpose of that delay was not to obtain the confession but to transcribe it.

The delay between the first written statement and the second written statement, however, is another matter. Deputy Ferrell was questioned about the purpose of those delays:

> Q. ... [Y]ou certainly had probable cause for an arrest after the first confession was made, right?
>
> A. In my opinion.
>
> Q. And when Corporal Henry came out after interrogating the defendant the first time, he told you, didn't he, that he had gotten a confession from the defendant?
>
> A. Yes, sir.

Q. So you knew at that moment that the defendant had confessed and you were sure that would give you probable cause, right?

A. Made a better case, yes.

Q. But you went ahead and took another written statement and had Corporal Henry go in for another oral statement, and a second written statement just to give you more, right?

A. Just to clear up a few discrepancies.

. . .

Q. In fact, you believed you probably had probable cause to get a warrant even before the interrogation?

A. In my opinion.

Q. But you went ahead ... so you could get more evidence, right?

A. Well, so we could get a statement from him, yes.

As pointed out above, the "discrepancies" involved were not minor inconsistencies. Indeed, the discrepancies between the defendant's version of the murder contained in his first statement and the facts shown by the physical evidence in the case, as well as other evidence, were such as to render the first confession of limited value. By seeking a second confession to "clear up a few discrepancies" the police were actually holding the defendant for the explicit purpose of rendering a usable confession from him. A magistrate was available at the time and had been alerted that his services would be required. Under these facts the delay in taking the defendant before a magistrate after the first confession was so unjustifiable and unreasonable as to render the second written statement inadmissible. *See State v. Persinger, supra.*

The defendant also objected to admission of the first written statement on grounds that it was not made voluntarily. He claimed that he had not been given *Miranda* warnings prior to his first discussion with Corporal Henry. He also claimed that he had asked to talk

to a lawyer and that Henry promised him that he would only serve one year in jail if he confessed. Corporal Henry denied those allegations. There was no corroborating testimony on either side—it was Henry's word against that of the defendant. The trial judge chose to believe Corporal Henry and not the defendant. This is not a determination to be interfered with lightly. We are of the opinion that the trial judge's ruling that the State had shown the first confession to be voluntary by a preponderance of the evidence was not plainly wrong and against the weight of the evidence. The admission of the first confession, therefore, was not an abuse of discretion. *See State v. Vance, supra.*

The judgment of the Circuit Court of Preston County, entered on September 11, 1979, is reversed and the case is remanded to that court for further proceedings.

*Reversed and remanded.*