298 S.E.2d 857

**STATE of West Virginia**

v.

**Hobert SPARKS.**

**No. 15519.**

Supreme Court of Appeals of West Virginia.

Dec. 15, 1982.

Janet F. Steele, Asst. Atty. Gen., Charleston, for appellee.

William E. Kiger, Parkersburg, for appellant.

PER CURIAM:

Hobert Sparks appeals from his conviction by a jury of first degree arson in the Circuit Court of Pleasants County, for which he received two to twenty years in the penitentiary. Finding no error in the proceedings below, we affirm the conviction.

On July 29, 1980, a house owned by Gale and Elizabeth Flowers was destroyed by fire. Appellant and his brother, Raymond, lived about 1¼ miles from the Flowers residence. On August 19, 1980, the appellant went to the St. Mary's detachment of the West Virginia State Police and volunteered his assistance in finding the arsonist.

On August 25, 1980, three State Police officers questioned the appellant at a church near his home. Appellant first denied any knowledge about the fire; however after conversations with two officers, he gave them a written, signed statement in which he confessed to setting the fire. Appellant was indicted by the Pleasants County grand jury for first degree arson on September 8, 1980.

Trial was before a jury on October 6 and 7, 1980. An *in camera* hearing was held concerning the appellants' oral and written statements, after which the court ruled that the statements were voluntary and would be admitted into evidence. No eyewitnesses placed the appellant at the scene of the fire; the chief evidence against him was his confession and the testimony of his 64-year-old brother, Raymond Sparks. Raymond testified that some days before the fire, appellant told him he had a notion to burn the Flowers place down. He said that when appellant left on the evening of the fire to go to the home of a friend, he took a book of matches with him.

The evidence showed that the fire started some time before midnight on July 29, 1980. Philip Farson, a young friend of the appellant's, testified that the appellant was at his house that night, and had left after dark, between 10:00 and 11:00 p.m.

Appellant denied setting fire to the house. He said that he made the statements to the officers because they promised him that if he paid money damages for the property, nothing more would be said about it and the matter would be kept out of court. Both officers admitted that there was some discussion about civil liability and damages, but denied making any promises to him. The appellant offered a jury instruction on the voluntariness of his confession, which was refused. After 1½ hours of deliberation, the jury found him guilty of first degree arson.

On February 20, 1981, appellant filed a motion for a new trial based upon newly discovered evidence: Philip Farson had confessed to burning down the Flowers' house. An evidentiary hearing was held before Special Judge Frank J. DePond, who denied the motion on the grounds that the new evidence would not produce a different result.

The appellant seeks a new trial, assigning as error (1) the denial of his motion for a new trial based upon newly discovered evidence; (2) the refusal of his instruction on the voluntariness of his confession; (3) the admission into evidence of his written statement; (4) improper impeachment and the use of leading questions by the State with its own witness; and (5) improper remarks by the prosecutor during closing argument.

I

On February 14, 1981, Philip Farson signed a statement in which he confessed to setting fire to the Flowers' house. The appellant filed a motion for a new trial, based upon this newly discovered evidence which, he claims, would probably have produced a different result.

In the syllabus of *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979), we

reaffirmed our established standard for the determination of such motions:

" 'A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.' Syllabus Point 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894)."

We have also observed that "[a] new trial on the ground of after-discovered evidence or newly discovered evidence is very seldom granted and the circumstances must be unusual or special." Syl. pt. 9, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966).

■ The record of the evidentiary hearing on appellant's motion reveals that after his conviction, the appellant was confined in the Pleasants County Jail. Philip Farson was arrested on arson charges on December 8, 1980, and the two men were confined either in the same cell, or in adjoining cells, for some time. Although Farson said they never discussed the fire, he did ask the appellant to call his attorney for him. Appellant's attorney then came to the jail and took a written confession from Farson, which was witnessed by a deputy sheriff.

Against his attorney's advice, Farson testified that he set fire to the Flowers' house, and that the appellant was nowhere near the property. He was, however, uncertain about details of the incident, most notably the time of the year that the fire occurred. His testimony showed that he and the appellant were close friends and neighbors; he was twenty-four years old, and had known the appellant all of his life. Before making his confession, Farson had on at least two occasions specifically denied setting the Flowers fire, when questioned by police and the fire marshal's investigator.

Farson was examined by psychologists in connection with his competency to stand trial on the other arson charges. One of the psychologists testified that although they discussed the arson charges, Farson never admitted that he had set any other fires. The psychologist found Farson to be functionally retarded, and susceptible to making major errors in judgment; however he concluded at the time of his evaluation that Farson was competent to stand trial. In his opinion, Farson was easily influenced and impressionable, and that helping a close friend, even to the extent of confessing to a crime, would be consistent with his type of behavior. Finally, he thought it was "highly likely" that Farson could be acting under the control of, or at the suggestion of, the appellant.

The special judge considered the close relationship between Farson and the appellant, his prior inconsistent statements about his involvement in the Flowers fire, and the indefiniteness of his testimony. He could not give much weight to Farson's testimony, and concluded that the confession would be offset by his inconsistent statements. He found, therefore, that it would not produce any different result at a new trial, and overruled the motion.

In light of the fact that Farson testified for the appellant at trial, we find it difficult to believe that this evidence could not have been discovered before trial, by the exercise of due diligence on the part of the appellant. We are inclined to disapprove of a motion for a new trial based upon newly discovered evidence which comes from the testimony of a witness who testified for the movant in the first trial. *See, e.g., State v. McGee*, 160 W.Va. 1, 230 S.E.2d 832 (1976). Further, there was substantial evidence to

support the judge's finding that this evidence would not have produced a different result. All of the requirements of *Halstead, supra,* must be satisfied before a new trial will be granted. *See, e.g., Frazier, supra.* We conclude that the special judge did not abuse his discretion, and did not err in denying the appellant's motion.

## II

■ The appellant offered the following instruction, which was refused by the Court:

"Before you may consider an incriminating statement made by the Defendant to police officers as evidence of his guilt, the State must prove by a preponderance of the evidence that the statement was voluntarily made.

Among other things, for an incriminating statement to be made voluntarily, it must not be induced by threats, by physical abuse, by promises either direct or indirect, or by the exercise of improper influence; it must not be made during an unnecessary delay between the arrest of the Defendant and his arraignment by a magistrate; the Defendant must know and understand his right to remain silent and his right to counsel; and he must knowingly and intelligently waive those rights.

The ultimate question is whether or not the pressure for the Defendant to confess, if any has been shown to have existed, was sufficient to cause his will to be overborne and his capacity for self-determination to be critically impaired, when considered in the light of all the facts and circumstances surrounding the taking of the statement.

Therefore, unless you first find by a preponderance of the evidence that the Defendant's statement in this case was voluntary when judged by these standards, you may disregard his statement entirely as evidence of his guilt."

The record reveals that the State's primary objection to this instruction was that it went beyond the scope of the evidence—there was no evidence of threats, physical abuse, or unnecessary delay between arrest and arraignment. Defense counsel apparently did not offer another instruction, nor did he offer to amend this one. As a result, no instruction on the voluntariness of the appellant's statement was given to the jury. Counsel for the appellant did, however, argue against the voluntariness and credibility of the confession before the jury.

The appellant contends that the trial court's refusal of his offered instruction violated our holding in *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978). Syllabus point 5 of *Vance* states: "In all trials conducted hereafter where a confession or admission is objected to by the defendant at trial or prior to trial on the grounds of voluntariness, the trial court must instruct the jury on this issue if requested by the defendant."

■ We will not attempt to determine whether the proffered instruction correctly stated the law, because it is clear that it referred to circumstances which were not presented by the evidence. "It is error to give instructions to the jury, even though they state correct propositions of law, when there is no evidence to support some of the hypotheses which they contain." Syl. pt. 7, *State v. Morris,* 142 W.Va. 303, 95 S.E.2d 401 (1956). We have consistently held that instructions which are not supported by the evidence are erroneous, and should be refused. *See, e.g., State v. Woods,* 169 W.Va. 767, 289 S.E.2d 500 (1982); *State v. Starr,* 158 W.Va. 905, 216 S.E.2d 242 (1975). Therefore, the trial court quite properly refused the instruction, as offered.

■ The appellant contends that under *Vance, supra,* the trial court must give an instruction similar to the one proffered by defense counsel. In *Vance,* no instruction was submitted by the defense, and none was given by the court. We said that "as a general rule trial courts have no duty to give instructions *sua sponte* on collateral issues not involving an element of the offense being tried", and the trial court did not commit reversible error by failing to submit the voluntariness issue to the jury on its own motion. *Vance, supra,* 162

W.Va. at 473, 250 S.E.2d at 151. In the case *sub judice*, the appellant did not offer another instruction, nor did he seek to amend the one that was refused, which would have been simple enough to do. As a result, he effectively offered no instruction. It was not error for the trial judge not to give a voluntariness instruction on his own after properly refusing the appellant's instruction.

## III

The appellant contends that he made no voluntary, knowing and intelligent waiver of his right to remain silent, and that therefore the court erred in admitting his written statement into evidence.

■ "It is a well-established rule of appellate review in this state that a trial court has wide discretion in regard to the admissibility of confessions and ordinarily this discretion will not be disturbed on review." Syl. pt. 2, *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978). Further, "[a] trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syl. pt. 3, *State v. Vance, supra.*

■ Testimony taken during the *in camera* hearing showed that the appellant talked to Cpl. Billy Vira, the investigating officer, on August 19, 1980 at the State Police office. At that time, he told Vira that he didn't set the fire, and that he would help him find out who did. On August 25, 1980, Vira, accompanied by Cpl. Larry Henry and Trooper Leonard Lanham, went to talk to the appellant. Vira introduced the other officers, then went and sat in his car.

Cpl. Henry testified that he told the appellant he was assisting Vira in investigating the Flowers arson, and orally advised him of his constitutional rights. He said the appellant appeared to understand his rights, and that he did not make any promises or threaten the appellant. Appellant agreed to talk to him. Henry told him that his brother had given Vira a statement which indicated that the appellant was involved, or knew something about the fire; Henry then reiterated his rights to him. The appellant said he knew nothing about the fire.

Henry told the appellant that if any other information came out, and he were convicted of the crime, Flowers could seek civil damages for his property. When appellant asked how much that would amount to, Henry said it would probably depend on how much income he had. Appellant then said he would pay for the damages. Henry told him to talk to Vira, since he was the investigating officer. Vira did not hear any of this conversation.

The appellant went over and got into the car with Vira, who told him that he was suspected of arson, a felony. Vira testified that he gave the appellant a written copy of his rights to follow along, and read his rights to him. The appellant said he understood them, and signed the "waiver of rights" form.[1] Appellant's first statement to Vira was about how much he made, and the possibility of paying for the damages. Vira said he didn't know anything about that, and proceeded to question him about the fire. Vira took down the appellant's statement in writing, read it to him, and the appellant signed it.

Defense counsel objected to the introduction of the written statement on the grounds that appellant made it unintentionally, in connection with a discussion about civil liability and restitution, and did not specifically understand that he was admitting his guilt to a crime. Therefore, there was no knowing and intelligent waiver of his rights. The appellant did not testify.

At the conclusion of the hearing, the court said:

"I would find, on the showing made, that the defendant was advised of his

---

1. The form signed by the appellant read:
"I have had this statement of my rights read to me and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

constitutional rights, both by Corporal Henry and Corporal Vira and that both statements were made knowingly and that there was a knowing and intelligent waiver of Mr. Sparks' constitutional rights and that the statement was voluntary and will permit it to go to the jury."

The appellant maintains that the interrogation tactic used by Corporal Henry comes within the doctrine set forth in the syllabus of *State v. Parsons,* 108 W.Va. 705, 152 S.E. 745 (1930): "When the representations of one in authority are calculated to foment hope or despair in the mind of the accused to any material degree, and a confession ensues, it cannot be deemed voluntary."

In *Parsons, supra,* the defendant, a juvenile who could not even write his name, was told by an officer that if he confessed, they might get him off with reform school, rather than a penitentiary term. We said that such an inducement invalidates the confession. In *State v. Goldizen,* 93 W.Va. 328, 116 S.E. 687 (1923), the defendant was told by officers that his confederate had made a statement throwing the blame upon him; further, he was aware that his brother had given police a statement detailing the crime as related to him by the defendant. We said that absent any threat or promise made to induce the defendant to confess, his confession would be admissible.[2]

In the instant case, the testimony during the *in camera* hearing shows no representations "calculated to foment hope or despair" in the mind of the appellant, nor any promises or threats made to induce him to confess. The statement that his brother had implicated him in the crime, a fact which would affect his trial, does not make his confession inadmissible. *See Goldizen,* 93 W.Va. at 334, 116 S.E. at 690. Although the appellant testified later that the officers promised to drop the charges if he paid civil damages, he chose not to testify at the *in camera* hearing. This information was not before the court at the time his confession was found to be voluntary. Even with this testimony, however, the

record amply supports the trial court's findings. We find, therefore, that the court did not abuse its discretion in holding the statement admissible.

## IV

The appellant contends that the trial court erred in allowing the prosecutor to impeach his own witness, Raymond Sparks, without laying a proper foundation, and to use leading questions in his examination of Mr. Sparks. We find no merit in these contentions.

On direct examination, Sparks testified that the appellant had not said anything to him about the Flowers property. The prosecutor said he was surprised by this testimony, and began to question Sparks about a conversation between Sparks and Cpl. Vira. Sparks said he remembered the conversation, but did not recall when it took place, or just what he had told Vira. The court permitted the prosecutor, over defense objection, to ask Sparks about this conversation. Sparks then remembered that two or three days before the fire, the appellant told him he had a notion to burn the Flowers' place down. Appellant maintains that a proper foundation was not laid for this impeachment, and that there was no evidence that the testimony was, in fact, a surprise to the prosecutor.

 While as a general rule a party may not impeach his own witness, when through entrapment, hostility or surprise a party is misled or prejudiced by the testimony of his witness, he may impeach his own witness to the extent permitted by the trial court in the exercise of its discretion. *E.g., Crum v. Ward,* 146 W.Va. 421, 122 S.E.2d 18 (1961). Further, "[a] party who is surprised by unfavorable testimony given by his own witness may interrogate such witness as to previous inconsistent statements made by him." Syl. pt. 5, *State v. Ferguson,* 165 W.Va. 529, 270 S.E.2d 166 (1980), *quoting,* syl. pt. 2, *State v. Swiger,* 105 W.Va. 358, 143 S.E. 85 (1928).

**2.** *See also State v. Stotler,* 168 W.Va. 8, 282 S.E.2d 255 (1981), and cases collected therein.

328

In the instant case, the testimony of Sparks at trial was contrary to statements previously made by him, and to the State's expectations of what his testimony would be. This was a sufficient showing of surprise, *see, e.g., Swiger, supra,* and a proper foundation for the prosecutor's questions regarding the previous inconsistent statements. Although an examination of the record reveals that the prosecutor may have asked a number of somewhat leading questions of Mr. Sparks, we do not find them to be improper, in light of the witness' largely monosyllabic responses, and his apparent reluctance to testify against his brother. We hold, therefore, that the questioning of Sparks by the prosecuting attorney was proper, and the trial court did not abuse its discretion in permitting it.

V

Finally, the appellant contends that the trial court should have declared a mistrial when the prosecuting attorney, during closing argument, implied that the appellant had a duty to call witnesses or produce evidence in his behalf. The evidence at trial showed that Mr. Flowers had a sister who was married to Ott Malone, and who with her husband owned a country store near the appellant's home. To prove malice on the part of appellant, the State showed, through the testimony of appellant and his brother, that appellant's credit had been cut off at the Malones' store.

In closing argument, defense counsel commented on this theory:

"Mr. Bryant says that Mr. Sparks was mad at Ott Malone's wife and, therefore, he burnt down her brother's house. First of all, if that be the case, then that's what the State relys [sic] upon, why was this Mrs. Malone not brought in here to testify about that?"

In the rebuttal portion of his closing argument, the prosecutor discussed testimony about where the fire started, then made these allegedly prejudicial statements:

"There has been no evidence to rebutt [sic] that expert testimony, even though defense counsel could have brought somebody in if he wanted to. He could have brought Mrs. Malone if he wanted to or Mr. Malone.

"We produced evidence showing that the credit was cut off. Why bring in everybody else? Defense could have brought him in if he wanted him."

The appellant did not object to these comments at the time they were made, nor did he ask the court to instruct the jury to disregard them. After the jury had retired to consider its verdict, appellant moved for a mistrial on the basis of these statements, which was overruled by the court. He had earlier offered a jury instruction to the effect that he had no burden of production or proof, which was refused because it was covered by the court's charge. He now asserts that absent a proper general instruction that he had no duty to present evidence, or an instruction telling the jury to disregard the prosecutor's statement, the statement was highly prejudicial.

As a general rule, in order to take advantage of allegedly improper remarks by a prosecuting attorney during closing argument, an objection must be made and counsel must request the court to instruct the jury to disregard them. *State v. Coulter,* 169 W.Va. 526, 288 S.E.2d 819 (1982); *State v. Lewis,* 133 W.Va. 584, 57 S.E.2d 513 (1949). In the case before us, defense counsel chose to do neither. Therefore, the court did not err in failing to instruct the jury to disregard the prosecutor's comments, where no objection nor request for such an instruction was made.

It is well settled that "[a] judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. pt. 5, *State v. Ocheltree,* 170 W.Va. 68, 289 S.E.2d 742 (1982). Although the prosecutor's comments may have been improper, we cannot say that the trial court erred in failing to grant a mistrial based upon them alone. When viewed in the context of the entire trial, including the argument of defense

counsel, we do not find that the remarks were prejudicial, or resulted in injustice being done. Therefore, we will not disturb the court's decision on this point.

For the reasons stated herein, the judgment of the Circuit Court of Pleasants County is affirmed.

Affirmed.