301 S.E.2d 187

**STATE of West Virginia**

v.

**John Edward WILLIAMS.**

No. 15560.

Supreme Court of Appeals of
West Virginia.

March 10, 1983.

Timothy Cogan, Michael J. Moyle, Wheeling, for appellant.

Chauncey H. Browning, Jr., Atty. Gen., and Silas B. Taylor, Asst. Atty. Gen., Charleston, for appellee.

NEELY, Justice:

John Edward Williams appeals from a jury verdict finding him guilty of the murder of Carlton Harris, and sentencing him to the State Penitentiary for life. Several confessions were used as evidence against appellant at the trial. In *State v. Williams*, 162 W.Va. 309, 249 S.E.2d 758 (1980), we ruled that a first confession by the appellant was inadmissible, and that the State therefore had the burden of rebutting a presumption that subsequent confessions were the product of the first and were also inadmissible. The State has failed to meet this burden, and we must reverse appellant's conviction.

I

The background of this case is a lengthy one. In February of 1974 an elderly couple, Dorothy and Carlton Harris, were found beaten to death in the basement of the couple's home in Moundsville, West Virginia. At the March, 1974 term of the Circuit Court of Marshall County the appellant was indicted for both murders, and in May of 1975, he was convicted of the murder of Mrs. Harris. We overturned this conviction in *State v. Williams, supra,* upon finding that the first confession, elicited from the appellant after a custodial search turned up incriminating evidence, should have been excluded. The case of Mr. Williams came before us again in the form of a petition for a writ of prohibition to restrain the trial court from permitting the appellant's subsequent confessions to be admitted into evidence, and to restrain the trial court from going forward with the trial, since appellant disputed a ruling that he was competent to stand trial. *State ex rel. Williams v. Narick,* 164 W.Va. 632, 264 S.E.2d 851 (1980). We denied that petition on the procedural grounds that it would have been improper, under the circumstances, for us to use the writ of prohibition to review essentially factual determinations by the trial judge. The State has now gone forward with its prosecution of the defendant for the murder of Mrs. Harris's husband, and using the four subsequent confessions, has secured a conviction of the appellant for the murder of Carlton Harris. We are now called upon to review on appeal those matters we could not properly review in prohibition.

II

■ The first matter is the admissibility of the four subsequent confessions introduced at trial by the State. As we have said, appellant's first confession is inadmissible, and its inadmissibility gives rise to a presumption that the subsequent confessions share its taint. The standard that the State must meet in order to use subsequent confessions is that the connection between them and the inadmissible first confession must have become "so attenuated as to dissipate the taint." *State ex rel. Williams v. Narick, supra,* 164 W.Va. at 638, 264 S.E.2d at 855, citing: *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

■ The evidence indicates the following chain of events leading to the taking of the confessions: At approximately 1:25 a.m. on February 28, five police officers went to the appellant's home, and requested that he voluntarily come to the police station. Mr.

Williams agreed, and was driven to the station. At 1:55 A.M., Mr. Williams signed a Waiver of Rights form, and was questioned. During the questioning the appellant assented to a search of his clothing. The search produced a watch belonging to the victim and, presented with the watch, the appellant began to confess. At approximately 3:00 A.M., the appellant's first statement—the statement ruled inadmissible in *State v. Williams, supra*—was taken. It is from this point that we must, on review, measure the attenuation of the taint. In order to find the subsequent confessions admissible we must find evidence of "a break in the causative link running between the confessions." *Id.,* 162 W.Va. at 318, 249 S.E.2d at 764.

The record reveals that the first of the subsequent confessions was taken at the police station at 5:05 A.M. the same day. Williams was then incarcerated at approximately 6:00 A.M. At 8:30 the following morning, March 1, another confession was taken at the Marshall County jail. The fourth in the series was taken at 1:15 P.M. on March 2, and the final confession in the series was taken at 6:45 P.M. on March 3.

There is no question here of police misconduct or brutality. However, police behavior need not rise to the level of misconduct before constitutional protections may attach. *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Furthermore, it is not on the issue of police behavior that the question exclusively turns. As Professor Whitebread points out, "The two categories of factors in the due process cases are (1) the police conduct involved and (2) the characteristics of the accused." C.H. Whitebread, *Constitutional Criminal Procedure* 164, (1978). The totality of the circumstances in this case indicate that the subsequent confessions admitted at the trial below were not voluntary and independent, but rather were more fruit of the original "poisonous tree."

The elements leading us to this conclusion are several. First, the standard of admissibility for the later confessions was raised by the inadmissibility of the first confession as the product of an involuntary custodial search. The confessions not only had to be "voluntary," but also in some way independent of or distinct from the original confession. Second, the appellant suffers from a mental disability. On the Wechsler Adult Intelligence Scale the appellant scored a total IQ of 59, which puts him in a category of extremely low intelligence. The mental defect of the appellant throws into question his ability to understand the Miranda warnings, *State v. Hamrick,* 160 W.Va. 673, 236 S.E.2d 247 (1977), and appears to have rendered him highly suggestible.[1] Furthermore, it implies that he may be so incapable of gathering his limited wits about him that any confession made on his own after the series of confessions had begun would not be the product of the mental regrouping required for the confession to be independent and voluntary. Third, there are a number of factors that tend to suggest that there was no break in the causative link connecting the confessions. These factors include the uninterrupted detention of the accused, his repeated interrogation without a lawyer present,[2] and the presence at each interrogation of officers present at prior confessions.

Finally, and perhaps most importantly, the confessions appear in fact to be cumulative. The first of these subsequent statements was taken only two hours after the original confession, during which time the accused was taken to the scene of the crime and there questioned further. These two statements appear to represent not independent confessions, but rather the separate reduction to writing of two stages in one prolonged interrogation which

---

1. The defense's psychiatric expert testified at length to the appellant's susceptibility to suggestion. Although the state's expert disagreed with the defense expert's conclusions on nearly every matter, he did admit of the appellant that "you can put anything in his mouth."

2. Since the appellant did not request a lawyer, the confessions do not fail on the basis of appellant's lack of legal counsel. However, advice of counsel and the presence of the lawyer at an interrogation would, in these circumstances, very likely indicate a break in the causative link connecting that confession to prior confessions.

moved from the police station to the scene of the crime and back. The second, third and fourth in the series of subsequent confessions were admitted by the police to have been derived from the prior confessions, as the following testimony taken at a hearing below shows:

Q. Could you tell the Court why you decided to take a third statement from Mr. Williams at that time?

A. Yes. There were several unclear parts to this as to who instigated the action, who actually took the action; who participated in it; who knew that these people were on Third Street; did they go there by chance? Did they go there by design? There were any number of questions we had.

Q. What you're trying to say then is after reviewing the first and second statement, there were more questions you wanted to ask him?

A. Yes, sir.

Q. And that's why you said something that the third confession is a more detailed statement of what appears in the second confession?

A. Yes, sir.

. . . .

Q. At 1:15 P.M. on March 2nd, 1974, voluntary statement number # 4, was given by John Williams. What was your occasion that day to go back to Mr. Williams for a fourth time, for a fourth statement?

A. I believe we had talked to Moore prior to that statement and there was some missing articles. I believe that a radio was missing, items taken from the house we hadn't located yet and I think some of those questions determined what happened to some of this and I believe we had talked to Moore prior to this statement at Tyler County.

Q. To the best of your memory, is the substance on the 4th and the substance of the 3rd confession about the same but again the fourth being a more detailed statement?

A. Yes, I believe so.

. . . .

Q. Now the fifth confession was the 3rd of March at 6:45 P.M. What was the occasion of taking this fifth statement from the defendant?

A. Well, again, at this late date I would say we had gathered some more information. Like I say it was an on-going investigation and we probably came on a piece of information somewhere that we needed to clear up.

Q. Did you again examine the prior confession and would you have gone there to fill in some gaps in that confession?

A. I wouldn't say we would go back and examine one because we would more or less remember what was told to us by John and something would reflect what John said and we would try to get that matter straightened out.

Q. To the best of your knowledge, is the substance of the fifth one similar to that of the fourth and third confession?

A. Yes. I would say that the substance would be the same. Yes, sir. If you are talking about admitting complicity in the crime, we were more or less looking for details. We had two people we felt were involved in this and we were more or less looking for details.

The circumstances of this case compel the conclusion that the taking of these serial confessions amounted to a continuing harvest of the fruit of the "poisonous tree" —the original warrantless arrest and custodial search. No break in the causative link connecting these confessions having been established by the State, we hold that the confessions were incorrectly admitted into evidence by the trial court, and that this is reversible error.

### III

■ Since we are bound on the basis of the admission of these confessions to re-

verse the trial court's finding of guilt, we need not reach any further issues in this case. We are, however, concerned with the trial court's refusal to permit the appellant to introduce a sixth, previously suppressed, confession into evidence.

In this sixth confession Williams confessed to raping Dorothy Harris, a rape which the evidence indicated never took place. While the confession was deemed inadmissible for the purpose of proving the guilt of the accused, it was not *per se* inadmissible. Conceivably, evidence of Williams' confession to a rape that never actually occurred could have been vital to his theory of the case, and should have been admitted. *See State v. Foster*, 171 W.Va. 479, 300 S.E.2d 291 (1983). However, there is no record of any such theory being intelligently advanced by the appellant, and we do not expect trial judges to read the minds of defendants in order to ascertain their theory. Furthermore, the only likely purpose of introducing the sixth confession would be to discredit the four admitted confessions, and these we have just ruled inadmissible. Defendant's argument with respect to the admission of the sixth confession is theoretically correct, but is in this case rendered moot.

Where a statement or confession is inadmissible by the State because of a constitutional infirmity in the method by which it was obtained, the reason for its inadmissibility is the belief that illegal police conduct will be discouraged if the prosecutorial enterprise is denied the fruits of the illegal conduct. The constitutional right to have a tainted statement or confession suppressed is a natural outgrowth of a defendant's right to constitutional police conduct, and is personal to the defendant. Accordingly, since a defendant may knowingly and intelligently waive a constitutional right, *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) it is only logical to infer that he may waive the sanction of inadmissibility and demand that an otherwise inadmissible statement that tends to prove his theory of the case be introduced into evidence.

This does not mean, of course, that the defendant may selectively introduce parts of otherwise suppressed statements in order deliberately to create a false impression in the minds of jurors. The exclusionary rule is a shield, and not a sword, to criminal defendants. In fact, evidence inadmissible in the State's case in chief is constitutionally admissible by the State to impeach a criminal defendant where he attempts to proffer contradictory testimony. *State v. Goodmon*, 170 W.Va. 123, 290 S.E.2d 260 (1981); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1970). *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

## IV

The appellant asserts numerous other assignments of error. He asserts that the trial court erred in finding the appellant competent to stand trial. *W.Va.Code*, 27–6A–2(b) [1977] states in pertinent part that "[a]t the termination of [the competency] hearing the court of record shall make a finding of fact upon a preponderance of the evidence as to the individual's competency to stand trial based on whether or not the individual is capable of participating substantially in his defense and understanding the nature and consequences of a criminal trial." As *Code*, 27–6A–1(d) [1977] states, "[a] finding of incompetence for trial shall require proof by a preponderance of the evidence." While we are not absolutely convinced of the appellant's competency, neither are we convinced that the trial court's finding of fact on this matter, supported by the testimony of both state psychiatrists, was "clearly wrong." *State v. Meek*, 107 W.Va. 324, 148 S.E. 208 (1929).

Appellant also asserts that he was entitled to a directed verdict on the issue of his insanity, and that the court erred in refusing to grant the motion. The appellant has ignored our recent decision concerning directed verdicts on the issue of insanity, *State ex rel. Smith v. Scott*, 167 W.Va. 231, 280 S.E.2d 811 (1981), where we advised that the trial court "may, and in many cases must," direct the verdict where "the issue of sanity has been fully

developed at trial and it conclusively appears that the defendant was not criminally responsible at the time the crime was committed." *Id.*, 167 W.Va. 234, 280 S.E.2d at 813. In this case the conflicting evidence adduced at trial forecloses the possibility that the evidence was "conclusive" of insanity, even if, as the appellant alleges, his psychiatric experts were superior to the State's psychiatric expert.

Appellant's other assignments of error seek to condemn the following actions of the trial court: (1) limiting the appellant's psychiatric expert's testimony on the subject of the qualifications and ability of the State's psychiatric expert; (2) refusing to forbid the prosecutor's asking witnesses whether the defendant was capable of distinguishing right from wrong, and thereby "adopting" the M'Naghten test of insanity; (3) admitting a selection of photographs the appellant considers gruesome; (4) denying a defense motion for a change of venue; and (5) instructing the jury with regard to the felony murder rule, whose application to this case is alleged to have surprised appellant. Finally, appellant states that the trial judge's attitude was antagonistic and uncooperative, amounting to a "donning of prosecutorial garb" by the judge in violation of a criminal defendant's right to a fair trial. We have examined the record with these assignments of error in mind, and find them to be without merit.

However, because the admission of the tainted confessions amounts by itself to reversible error, the verdict below is reversed and the case remanded to the Circuit Court of Marshall County for further proceedings consistent with this opinion.

Reversed and remanded.