318 S.E.2d 35

**STATE of West Virginia**

v.

**David HILLIARD.**

No. 15954.

Supreme Court of Appeals of
West Virginia.

Dec. 15, 1983.

Dissenting Opinion Feb. 3, 1984.

Rehearing Denied April 11, 1984.

Chauncey H. Browning, Atty. Gen., and
J. Bradley Russell, Asst. Atty. Gen.,
Charleston, for appellee.

Karen L. Garrett, Garrett & Garrett,
Lost City, for appellant.

McGRAW, Chief Justice:

David Hilliard appeals from a final order of the Circuit Court of Hardy County entered August 19, 1982, which confirmed his conviction for grand larceny, denied his motion for a new trial, and sentenced him to an indeterminate term of one to fifteen years, with the recommendation that he be allowed to serve his sentence at the Huttonsville Correctional Center. Although the appellant raises several assignments of error, we find that the admission of his coerced confession is dispositive, and necessitates reversal.

On May 17, 1982, the appellant, along with Donald Davis, a juvenile, accompanied Nick Beckwith to a Moorefield, West Virginia car dealership, where Beckwith purchased a Pinto station wagon. While the salesman on duty was busy filling out the necessary paperwork, Davis stole the keys to a new Chevette. The three left the dealership at around 7:45 p.m. Early the next morning, at approximately 3:00 a.m., Davis and the appellant returned to the dealership and left with the Chevette. The appellant testified that he did not take part in the actual theft of the automobile, but waited outside the dealership on the sidewalk until Davis drove it onto the street. The appellant then got into the car and accompanied Davis, who was driving, to Petersburg, West Virginia, where Davis temporarily parked the car at a local roller skating rink. Later, Davis returned and hid the car outside of town.

Following up on information provided by a confidential informant, police officers located the stolen vehicle late that afternoon, and decided to place the car under surveillance, hoping that those involved in its theft would return. Sure enough, at approximately 9:30 p.m. that evening, the appellant, along with Davis, Beckwith, and two others, returned to the car in Beckwith's Pinto. One of the officers involved in the stakeout testified that Davis and the appellant left the Pinto, entered the Chevette, and started to drive away. The appellant, on the other hand, testified that only Davis entered the vehicle and began to drive it away, while he remained in the Pinto with the others, and that it was too dark for this officer to see exactly who entered the stolen Chevette. Nevertheless, when the police moved in, whomever was in the Chevette had abandoned it and returned to the Pinto.

The five suspects were apprehended by a total of eight police officers. While the five suspects were lined up at the scene with their hands in the air, one of the officers approached the appellant, pointed his finger at him accusatorily, and ordered the appellant to come with him. The officer then grabbed the appellant by the shirt and forcibly took him behind another officer's truck away from everyone else. The appellant testified at both an *in camera* hearing and at trial that when they were alone behind the truck, the officer held up a long, black flashlight and said, "[Y]ou better tell me who took this car [or] I'm going to knock your head off." The appellant did not immediately respond, but "just stood there" as the officer then handcuffed him and took him to the backseat of a police cruiser, where he was then read his rights by another police officer.

As soon as the officer had finished reading the appellant his *Miranda* warnings, and while seated next to the police officer who had just threatened him, the appellant began telling the officer that, "he and Donald Davis stole the car ...." The officer who had read the appellant his *Miranda* warnings testified, however, that "I asked him to wait until I got back to the office at the courthouse, and I'd take a written statement." The appellant was then transported to the courthouse, with the officer who had threatened him seated beside him in the backseat of the cruiser. The trip from the scene to the courthouse took about ten to fifteen minutes. The appellant's confession was taken within thirty minutes after his arrival at the courthouse. He did sign a waiver of rights form at that time, although he testified that he only signed it because an officer told him to sign it, and that he was tired and wanted to get out.

The appellant testified that he was frightened for several reasons. First, he

testified that immediately prior to his apprehension, he had heard a gunshot from the hillside overhead. Second, he stated that he felt threatened at being singled out from the other five suspects and at being taken out of everyone else's presence. Third, he testified that he was particularly afraid of the officer who threatened him because he was aware of this officer's reputation "for beating up people when he gets them by themselves." Finally, the officer's words and actions themselves made the appellant afraid.

■ In Syllabus Point 5 of *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975), this Court stated the general rule regarding the admissibility of confessions: "The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case." *See also* Syl. pt. 1, *State v. Williams*, 171 W.Va. 556, 301 S.E.2d 187 (1983); Syl., *State v. Wilson*, 170 W.Va. 443, 294 S.E.2d 296 (1982); Syl. pt. 1, *State v. Woods*, 169 W.Va. 652, 289 S.E.2d 457 (1982); Syl. pt. 1, *State v. Mitter*, 169 W.Va. 652, 289 S.E.2d 457 (1982); Syl. pt. 3, *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982); Syl. pt. 1, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978). The method by which this determination is to be made is through an *in camera* voluntariness hearing: "It is the mandatory duty of a trial court, whether requested or not, to hear the evidence and determine in the first instance, out of the presence of the jury, the voluntariness of an oral or written confession by an accused person prior to admitting the same into evidence." Syl. pt. 2, *State v. Persinger, supra, quoting,* Syl. pt. 1, *State v. Fortner*, 150 W.Va. 571, 148 S.E.2d 669 (1966), *overruled in part, State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981).

■ We have also stated that, "It is a well-established rule of appellate review in this state that a trial court has wide discretion in regard to the admissibility of confessions and ordinarily this discretion will not be disturbed on review." Syl. pt. 2, *State v. Vance, supra; see also* Syl. pt. 3, *State v. Buck*, 170 W.Va. 428, 294 S.E.2d 281 (1982); Syl. pt. 3, *State v. Goodmon*, 170 W.Va. 123, 290 S.E.2d 260 (1981); Syl. pt. 2, *State v. Gwinn*, 169 W.Va. 456, 288 S.E.2d 533 (1982).

In *State v. Goff*, 169 W.Va. 778, 289 S.E.2d 473, 476 (1982), this Court noted that, "[e]ven prior to *Miranda*, it was universally recognized that a coerced confession was inadmissible. *E.g., Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982); *State v. Zaccario*, 100 W.Va. 36, 129 S.E. 763 (1925)." There is no question that the appellant's statements in the police cruiser immediately after being threatened were coerced. In fact, the State did not attempt to introduce these statements. The crucial issue is whether there was "a break in the causative link running between" this confession and the one taken by police approximately forty-five minutes later. *State v. Williams*, 171 W.Va. 556, 301 S.E.2d 187, 189 (1983), *quoting, State v. Williams*, 162 W.Va. 309, 249 S.E.2d 758, 764 (1980). "The standard that the State must meet in order to use subsequent confessions is that the connection between them and the inadmissible first confession must have become 'so attenuated as to dissipate the taint.' *State ex rel. Williams, v. Narick*, 164 W.Va. 632 [264 S.E.2d 851, 855 (1980)]." *State v. Williams*, 171 W.Va. at 557, 301 S.E.2d at 189. Modifying Syllabus Point 4 of *State v. Williams*, 249 S.E.2d 758, somewhat, we note that where an accused makes a confession as the result of illegal coercion, and upon subsequent questioning again confesses, there is a rebuttable presumption that the second and each succeeding confession is a product of those that precede it.

■ The officer who threatened to knock the appellant's head off did not testify either at the voluntariness hearing or at trial. The two officers who did testify admitted that this officer took the appellant out of sight and hearing, and therefore could not affirm or deny the fact that this threat was made. Two things seem obvious, the officer took the appellant aside to tell him something, and the words "[Y]ou better tell me who took this car [or] I'm going to

knock your head off" are coercive. Yet, despite the fact that no evidence was introduced to contradict the appellant's testimony, the trial court held, "The Court does not find that there is any threat, fear or inducement by a preponderance of the evidence."

Recently, in *State v. Easter*, 172 W.Va. 338, 305 S.E.2d 294 (1983), we faced a similar situation where the trial court held that the defendant did not tell an officer that he wanted a lawyer, despite the fact that this officer did not testify at the suppression hearing concerning the admissibility of the defendant's subsequent statements. Because Easter's testimony was "unrefuted," we held as an "historical fact that Easter requested an attorney `....`" 172 W.Va. at 342, 305 S.E.2d at 299. Similarly, in this case, there was no evidence before the trial court to weigh concerning the coercive nature of the appellant's first confession. Therefore, the trial court's finding on this point was plainly wrong.

The issue then becomes whether there was "a break in the causative link between the [two] confessions" under the *Williams* cases to render the second confession voluntary. The State contends that because *Miranda* warnings were given the appellant twice after the threats were made; because his second confession was taken at the courthouse some distance and time away; and because the threatening officer was not present at the time of the second confession, the causal link had been broken between the coercive behavior and the second confession. We do not agree.

In *Williams*, 162 W.Va. 309, 249 S.E.2d 758, the defendant initially confessed as the result of being confronted with illegally seized evidence. With regard to this first confession, we held that "Where a confession is induced by illegally seized evidence, the confession is subject to exclusion as 'fruit of the poisonous tree.'" Syl. pt. 3 *Williams*. On remand in *Williams*, the trial court admitted four subsequent confessions, apparently finding that the State had rebutted the presumption that subsequent confessions share the taint of their predecessor. On appeal of Williams' second conviction, this Court held, in an opinion by Justice Neely, that the admission of these subsequent confessions constituted reversible error because the causal link connecting these confessions with the first had not been broken. *Williams*, 171 W.Va. at 559–560, 301 S.E.2d at 191. Justice Neely emphasized that despite the fact that the confessions involved had taken place over a three day period, the subsequent confessions were not independent of or distinct from the original; the defendant suffered from a mental disability; the defendant's detention was uninterrupted; he was repeatedly interrogated without a lawyer present; the same officers were present at each of the confessions; and the confessions appeared to be cumulative.

In the present case, a period of only about five minutes elapsed between the officer's threat and the appellant's initial confession. While in the middle of this initial confession, the appellant was told to wait and repeat his story at the courthouse. The appellant then was forced to ride with the officer who had just threatened him in the backseat of the police cruiser to the courthouse. When he arrived at the courthouse some ten to fifteen minutes later, his statement was taken. Although the threatening officer was not actually present at the time this second confession was given, he was in the vicinity. The officer who did take his statement at the courthouse was the same one who had told him to wait until they got to the courthouse to make his statement. There was little difference between the statement the appellant gave police at the courthouse and the statement he made at the scene after being threatened. Although the appellant in this case did not suffer from as severe a mental disability as the defendant did in *Williams*, the difference in their intellectual capacity is merely one of degree, and the appellant's volition in this case, as in *Williams*, could readily be diminished by his low intelligence. Viewing the circumstances objectively, it is readily apparent that the nexus between the confessions involved in this case is substantially closer than was the nexus between the confessions in *Williams*. Particularly, the potential for

the continued influence of coercion is much greater in this case than was the confrontation with illegally seized evidence in *Williams.* Persuaded as we are by *stare decisis* and precedent, we hold, as we did in *Williams,* that the circumstances of this case compel the conclusion that there was no break in the causal link between the two confessions.

For the foregoing reasons, the judgment of the Circuit Court of Hardy County is reversed, and the case is remanded for a new trial.

Reversed and remanded.

McHUGH, Justice, dissenting:

The record in this case indicates that shortly after his arrest the appellant made a written confession concerning the theft of the automobile. After conducting an *in camera* hearing, the trial court found that the confession was not a product of "any threat, fear or inducement." The trial court held that the statement was admissible at the appellant's trial.

In its examination of the record, the majority emphasizes the testimony of the appellant that, at the time of the arrest, an officer threatened the appellant with violence in order to induce the appellant to confess to the offense. Noting that such testimony was uncontradicted, the majority concludes that the officer's threats ultimately resulted in, and tainted, the appellant's written confession.

I dissent from the implication of the majority that, because the appellant's testimony concerning the threats was uncontradicted, the trial court in this case necessarily had to find that threats were made.

In *Collett v. Commonwealth,* 296 Ky. 267, 176 S.W.2d 893 (1943), the Court of Appeals of Kentucky affirmed the defendant's conviction of manslaughter. In that case, the court held that the trial court acted properly in submitting to the jury the issue of whether the defendant had been empowered with arrest authority during the period in question. The defendant asserted that the testimony concerning that authority was undisputed. The Court of Appeals stated as follows:

While we recognize the rule that the Court should not submit to the jury an issue about which there is no contradiction in the evidence, we are not willing to extend it to include instances where the only proof of the uncontradicted fact is the testimony of persons for whose benefit the testimony is given.

296 Ky. at 274, 176 S.W.2d at 897.

*See also Roberts v. State,* 36 Ala.App. 491, 494, 59 So.2d 821, 824 (1952), "in criminal cases, the jury are the judges of fact, and the credibility of the witnesses is for the jury even if the evidence is without dispute," and *Commonwealth v. McNeese,* 156 Mass. 231, 232, 30 N.E. 1021, 1022 (1892), "in this Commonwealth there is now no rule that a witness must be believed simply because he is not impeached and tells a plausible story." Annot., 62 A.L. R.2d 1191 § 7 (1958); 81 Am.Jur.2d *Witnesses* § 660 (1976).

The officer who allegedly threatened the appellant did not appear at the *in camera* hearing concerning the admissibility of the appellant's written confession. Of course, the testimony of such officer would have been helpful with respect to the question of whether threats were made. The testimony of the appellant concerning the threats obviously supported the appellant's theory that his written confession was the product of coercion.

I do not believe that under the circumstances of this case the trial court was bound by the appellant's testimony. I would not extend *State v. Easter,* cited by the majority, to a point which would, in cases of this nature, preclude a trial court's discretion concerning the admissibility of confessions.

This Court has held, as recognized in the opinion of the majority, that "[i]t is a well-established rule of appellate review in this state that a trial court has wide discretion in regard to the admissibility of confessions and ordinarily this discretion will not be disturbed on review." Syl. pt. 2, *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978). *See also* syl. pt. 3, *State v. Sparks,* 171 W.Va. 320, 298 S.E.2d 857 (1982); syl.

pt. 2, *State v. Goodmon,* 170 W.Va. 123, 290 S.E.2d 260 (1981); *State v. Adkins,* 170 W.Va. 46, 289 S.E.2d 720, 728 (1982); syl. pt. 2, *State v. Woods,* 169 W.Va. 767, 289 S.E.2d 500 (1982); syl. pt. 1, *State v. Wimer,* 168 W.Va. 417, 284 S.E.2d 890 (1981); syl. pt. 1, *State v. Lamp,* 163 W.Va. 93, 254 S.E.2d 697 (1979). Justice Neely joins in this dissent.