******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., with whom PALMER and ROB-INSON, Js., join, dissenting. By characterizing the prosecutor's misconduct in this case as "not particularly severe," the majority minimizes the significance of the prosecutor's knowing misrepresentation of the truth to the jury about a material fact in order to support the state's theory of the case. In doing so, the prosecutor perverted the effect of the trial court's suppression of evidence unlawfully obtained, and contorted the absence of that evidence into the "essence" of the state's case. It is never proper for a prosecutor—a minister of justice—to advance a theory based on facts that the prosecutor knows is false. By purposefully misleading the jury in order to fill a gap in the state's case caused by the suppression of evidence, the prosecutor engaged in misconduct that was so substantial and severe that it denied the defendant, Anthony Martinez, his due process right to a fair trial. The majority's conclusion to the contrary compels me to dissent.

As the majority itself acknowledges, the trial court made it clear that the parties would only be allowed to make references to the lack of money found on the defendant "if clothed in the qualifying language" that there was no *evidence* of money found. The prosecutor's argument to the jury that there was, in fact, *no money* found on the defendant, therefore, manifestly violated the court's unambiguous instruction. Moreover, the prosecutor then compounded this impropriety by implying to the jury that all of the drugs and the money were in the possession of the defendant's alleged coconspirator, Mari Vargas, in order to support the state's theory that the defendant, acting as the ringleader, sought to exculpate himself by sequestering all of the contraband—both the drugs *and* the money—with Vargas. The prosecutor intoned that such a state of affairs only "makes sense" and readily acknowledged that this arrangement formed the "essence [of] the state's case."

The majority characterizes the prosecutor's argument regarding this arrangement as one that simply asked the jurors to draw on their own experience, intuition, and common sense to determine whether the defendant possessed narcotics with the intent to sell, even though there was no evidence that the defendant had actual possession of any narcotics or money. Perhaps in another case a jury could reasonably draw the inference that a person engaged in the sale of narcotics would want to ensure that all evidence of that crime would have been in the possession of an underling. The insurmountable problem presented by the prosecutor's argument in this case, however, is that it was belied by the true state of reality as known to the prosecutor. The

defendant *did not* make sure that all evidence related to the crime was in Vargas' actual possession—indeed, he had more money in his possession than she did.[1]

As a minister of justice with unique duties and responsibilities to the public and the judicial system, a prosecutor "has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. [The prosecutor] is not only an officer of the court, like every attorney, but is also a high public officer, representing the people of the [s]tate, who seek impartial justice for the guilty as much as for the innocent." (Internal quotation marks omitted.) *State* v. *Medrano*, 308 Conn. 604, 612, 65 A.3d 503 (2013). Misrepresenting the truth to a jury is improper conduct for any attorney, but it is particularly egregious when done by a prosecutor.[2] A prosecutor simply cannot advance a theory of the state's case that is inconsistent with the truth. Cf. *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 557, 663 A.2d 317 (1995) (prosecutor has duty "to ensure that all evidence tending to aid in the ascertaining of the truth be laid before the court, whether it be consistent with the contention of the prosecution that the accused is guilty").

Almost as significant as the misrepresentation of the actual facts, the prosecutor's actions deprived the defendant of the full effect of the remedy that he had obtained for unlawful police conduct. The $60 found on the defendant at the time of his arrest was suppressed by the trial court as the fruits of an illegal search. In light of that suppression, the state was tasked with the burden of proving its case beyond a reasonable doubt in the absence of that evidence. In arguing to the jury that it "makes sense" that the defendant would place the drugs *and money* in Vargas' possession because the defendant was the one "calling the shots," the prosecutor subverted the import of the court's suppression order by asking the jury to draw an inference based on a fact that he knew was false.

It is plain that, when evidence is suppressed, a *defendant* may not use the absence of that evidence offensively as a "sword," but rather may only use the suppression of evidence as a "shield." See, e.g., *Harris* v. *New York*, 401 U.S. 222, 226, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971) (although defendant's statements given in violation of *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 [1966], are inadmissible in prosecution's case-in-chief, "[t]he shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances"); *State* v. *Williams*, 171 W. Va. 556, 560, 301 S.E.2d 187 (1983) ("[t]he exclusionary rule is a shield, and not a sword, to criminal defendants"). If a defendant—the intended beneficiary of the exclusionary rule—is unable to use the suppression of evidence offensively, the state

should not be permitted to brandish its sword in a way that undermines the court's suppression order.

Although "[i]t is certainly within the bounds of fair advocacy for a prosecutor, like any lawyer, to ask the jury to draw inferences from the evidence that the prosecutor believes in good faith might be true . . . it is decidedly improper for the government to propound inferences that it knows to be false . . . ." *United States* v. *Blueford*, 312 F.3d 962, 968 (9th Cir. 2002).[3] Because the prosecutor knew that the defendant had money on his person at the time of his arrest, it was improper for the prosecutor to ask the jury to draw an inference from the misrepresentation that the defendant actually had no money on him. If "arriving at the truth is a fundamental goal of our legal system"; *United States* v. *Havens*, 446 U.S. 620, 626, 100 S. Ct. 1912, 64 L. Ed. 2d 559 (1980); allowing a prosecutor to misrepresent to the jury the true facts of a case is "neither consistent with the proper functioning and continued integrity of the judicial system nor with the policies of the exclusionary rules." *People* v. *Payne*, 98 Ill. 2d 45, 51–52, 456 N.E.2d 44 (1983), cert. denied, 465 U.S. 1036, 104 S. Ct. 1310, 79 L. Ed. 2d 708 (1984).

When considering that not only did the prosecutor disobey the court's clear and explicit order regarding proper argument with respect to this issue, in doing so he also intentionally misled the jury to draw a false inference, it becomes apparent that the improprieties in this case are significantly more severe than the majority acknowledges. Upon consideration of the factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), I am compelled to conclude that there was "a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *Angel T.*, 292 Conn. 262, 287, 973 A.2d 1207 (2009); see also id. (court gives consideration to six *Williams* factors: "[1] the extent to which the [impropriety] was invited by defense conduct or argument; [2] the severity of the [impropriety]; [3] the frequency of the [impropriety]; [4] the centrality of the [impropriety] to the critical issues in the case; [5] the strength of the curative measures adopted; and [6] the strength of the state's case" [internal quotation marks omitted]).

In my view, only the third *Williams* factor weighs in the state's favor. The improprieties were infrequent, as the prosecutor twice stated in closing argument that the defendant had no money in his possession at the time of his arrest. The fifth *Williams* factor is neutral; defense counsel did object to the prosecutor's argument, but declined the court's request to provide a limiting instruction, out of an entirely reasonable concern that bringing the issue to the jury's attention would only exacerbate the harm.

The remaining factors, however, all weigh in the

defendant's favor. The prosecutor's statements were uninvited by the defense.[4] Moreover, the severity of the prosecutor's impropriety cannot be understated. I agree with the majority that, in the abstract, the distinction between an argument that there was no money found on the defendant and one that there was no *evidence* of money found on the defendant may seem relatively inconsequential. The problem created by the prosecutor's statements in the present case, however, was not merely a matter of semantics. As I have previously explained, the prosecutor misled the jury to believe that the *reason* there was no money in the defendant's possession was because the defendant was the one "calling the shots," and the prosecutor perverted the effect of the suppression of evidence unlawfully obtained to support this theory. In doing so, the state simultaneously undermined both the constitutional objectives that animate the exclusionary rule and the truth seeking function of a trial. That is quite an ignominious feat.

It cannot reasonably be disputed that whether the defendant exercised dominion and control over the drugs or money found in Vargas' possession was the central issue in the case. Given the centrality of this issue, I disagree with the majority that the state otherwise presented a strong case. As the Appellate Court properly reasoned, the state's case was not particularly strong when "[t]he evidence connecting the defendant to the drugs found on Vargas' person consisted largely of circumstantial evidence based upon [the officer's] observations of the defendant's movements on the park bench from a sufficient distance that he used binoculars to make his observations." *State* v. *Martinez*, 143 Conn. App. 541, 580, 69 A.3d 975 (2013). Indeed, because the state could present no evidence of the defendant's actual possession of narcotics or money connected with the sale of narcotics, absent the improper argument that the prosecutor presented, the state would have had to rely solely on these distantly observed, ambiguous interactions between the defendant and Vargas to support its theory of constructive possession. Although there was some evidence that may have led the jury to draw the inference that the defendant exerted constructive possession of the narcotics and money found in Vargas' possession, because that was the crucial determination to be made in the case, the prosecutor's statements certainly undermines confidence in the verdict. Thus, in my mind, "the state's case was not sufficiently strong so as to not be overshadowed by the impropriety." *State* v. *Angel T.*, supra, 292 Conn. 293.

Accordingly, when properly viewing the impropriety as one relating to the prosecutor's deliberate attempt to mislead the jury, I would conclude that there is a "reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v.

*Albino*, 312 Conn. 763, 790, 97 A.3d 478 (2014).

I respectfully dissent.

[1] Although at oral argument before this court, the assistant state's attorney suggested that the $25 in Vargas' possession could have been the money from drug transactions, the state did not present any evidence regarding the street value of the quantity of drugs uncovered from the buyers' car that would support this theory.

[2] The prosecutor's misconduct not only was misleading to the jury and prejudicial to the defendant, but also may have violated the Rules of Professional Conduct. Specifically, rule 8.4 of the Rules of Professional Conduct provides in relevant part that "[i]t is professional misconduct for a lawyer to . . . (3) [e]ngage in conduct involving . . . misrepresentation; [or] (4) [e]ngage in conduct that is prejudicial to the administration of justice . . . ." Moreover, rule 4.1 of the Rules of Professional Conduct requires in relevant part that "[i]n the course of representing a client a lawyer shall not knowingly: (1) [m]ake a false statement of material fact to a third person . . . ." The commentary to rule 4.1 makes clear that "[m]isrepresentations can . . . occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements."

[3] See also *United States* v. *Earle*, 375 F.3d 1159, 1165 (D.C. Cir. 2004) (closing argument improper where "the prosecutor clearly had every reason to doubt, and no good reason to support, the inferences he propounded to the jury"); *United States* v. *Udechukwu*, 11 F.3d 1101, 1106 (1st Cir. 1993) ("[I]t is plainly improper for a prosecutor to imply reliance on knowledge or evidence not available to the jury. It is all the more improper to imply reliance on a fact that the prosecutor knows to be untrue . . . ." [Internal quotation marks omitted.]); *United States* v. *Kojayan*, 8 F.3d 1315, 1321 (9th Cir. 1993) (Although it is not improper for an attorney to argue facts he believes in good faith might be true, "[t]he government's lawyer . . . made factual assertions he well knew were untrue. This is the difference between fair advocacy and misconduct."); *United States* v. *Della Universita*, 298 F.2d 365, 367 (2d Cir.) ("[t]he prosecution has a special duty not to mislead; the government should, of course, never make affirmative statements contrary to what it knows to be the truth"), cert. denied, 370 U.S. 950, 82 S. Ct. 1598, 8 L. Ed. 2d 816 (1962).

[4] Although the state argues that defense counsel also acted improperly by arguing that there was no evidence that money was exchanged, this contention fails to recognize the fundamentally different roles that a prosecutor and defense counsel must serve during a criminal trial. Defense counsel is tasked with arguing that, despite the evidence presented at trial, the state failed to prove its case beyond a reasonable doubt. Arguing that the record is devoid of certain evidence that would establish guilt is simply in accordance with defense counsel's necessary role, which is to ask that the jury hold the state to its burden of proof.